[No. D011359. Fourth Dist., Div. One. Nov. 8, 1991.]

MONETTE KUPIEC, Plaintiff and Appellant, v.
AMERICAN INTERNATIONAL ADJUSTMENT COMPANY et al.,
Defendants and Respondents.

COUNSEL

Stephen J. Modafferi for Plaintiff and Appellant.

Shifflet, Walters, Bailey & Kane, Shifflet, Walters, Kane & Konoske, Gregory C. Kane and Christie Morgan for Defendants and Respondents.

OPINION

**BENKE, J.**—Monette Kupiec argues the trial court erred in sustaining without leave to amend a general demurrer to her second amended complaint. That complaint sought damages from Landmark Insurance Company (Landmark) and American International Adjustment Company (American) and others for alleged tortious interference with an earlier insurance claim and civil action, intentional concealment of evidence and intentional infliction of emotional distress. Kupiec contends, contrary to the conclusion of the trial court, the complaint stated facts sufficient to support each cause of action.

I

BACKGROUND

We state the facts as alleged in Kupiec's complaint. In 1973 Kupiec, an artist, was commissioned by the Hotel Del Coronado Corporation to execute

on a removable canvas an oil painting entitled *Hotel Del Coronado Tent City, Circa 1904*. The 14- by 17-foot painting was completed in 1973 and hung in the Hotel Del Coronado. Kupiec retained all rights in the painting except that of physical possession. In the spring of 1984, Kupiec discovered the painting was no longer in place and that a wall covering was installed where the painting had been displayed.

Kupiec inquired concerning the whereabouts of the painting. Although hotel management was aware it had been destroyed, Kupiec was told by various hotel employees the painting was in storage or tranferred to another location or that its location was unknown. Kupiec was barred from the hotel and was told she had no right to see the painting.

Kupiec filed suit against the hotel on various theories. The hotel submitted the matter to its liability carrier, Landmark, which turned it over to American for investigation. In September 1986 Kupiec informed American's counsel she was seeking information concerning the whereabouts of the painting. If she received information the painting was intact, she would dismiss her action. Kupiec also submitted a written settlement demand. American stated it would investigate the matter and inform Kupiec of its findings. Based on this representation, Kupiec agreed to postpone discovery.

In March 1987, American's counsel discovered the painting was still on the hotel's wall but had been painted over and destroyed. Counsel so informed American's adjuster. The adjuster informed his supervisor there was probable liability for destruction of the painting, there was probable coverage under the hotel's policy and the underlying claims would be settled. The adjuster's supervisor, however, instructed exceptions in the policy be explored, the matter be delayed and attempts be made to eliminate Landmark's liability.

In April 1987, Kupiec resumed contact with American's counsel. Despite her continued inquiries, however, counsel withheld all knowledge concerning destruction of the painting and Landmark's probable liability under the hotel's policy. Kupiec commenced discovery. Landmark and American directed counsel and their insured to falsely deny knowledge of the whereabouts of the painting or at least ratified such conduct.

In September 1987, in Kupiec's presence, a wall covering at the hotel was peeled back to reveal the painting still in place but in a severely damaged condition.

In March 1988 Landmark and American settled Kupiec's claim against the hotel.

Thereafter Kupiec brought this action in which she named Landmark, American and others as defendants.

## II

### DISCUSSION

Kupiec argues the trial court erred in sustaining without leave to amend a general demurrer to her second amended complaint. That complaint sought damages from American and others for alleged tortious interference with the earlier insurance claim and civil action against the hotel, intentional concealment of evidence and intentional infliction of emotional distress. Kupiec contends that contrary to the conclusion of the trial court, the complaint stated facts sufficient to support each cause of action. We conclude the demurrer was properly sustained.

■ "In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. [Citations.] The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. [Citations.] It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. [Citations.] But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. [Citations.]" (*Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].)

■ Kupiec argues she pleaded all elements of intentional, or in the alternative negligent, interference with prospective economic advantage and the trial court erred in sustaining the demurrer without leave to amend as to that cause of action.

In her first cause of action Kupiec alleged that having notice of her claim and the hotel's probable liability, American intentionally interfered with her prospective economic advantage by purposefully misrepresenting and concealing its actual knowledge of the whereabouts of the painting and by otherwise delaying resolution of her claim against the hotel. In the alternative Kupiec alleged that based on American's knowledge of her claim and knowing her inability to independently determine the whereabouts of the painting, a duty of care arose on behalf of American not to negligently interfere with Kupiec's prospective economic advantage. Kupiec alleged American's conduct breached that duty. Kupiec contends the same facts are

sufficient to state causes of action for intentional concealment of evidence and intentional infliction of emotional distress.

We conclude the demurrer was properly sustained as to all of Kupiec's causes of action because the communicative acts on which they are based were privileged under Civil Code[1] section 47, subdivision (b)(2).

Section 47, subdivision (b)(2), makes privileged any publication or broadcast made in a judicial proceeding. The privilege has been given broad application to further the public policies it is designed to serve. The section affords litigants freedom of access to the courts and open channels of communication by absolutely protecting them from derivative litigation based on communicative acts during judicial proceedings. (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 211, 213-216 [266 Cal.Rptr. 638, 786 P.2d 365].)

■ Originally designed to provide a privilege in defamation situations, the section now applies to any communication, not just a publication, and applies to all torts except malicious prosecution. The privilege applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation and (4) has some connection or logical relation to the action. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.)

■ However, section 47, subdivision (b)(2), applies only to communicative acts and does not privilege tortious courses of conduct. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 205 [271 Cal.Rptr. 191, 793 P.2d 524]; *Pacific Gas & Electric Co.* v. *Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132, fn. 12 [270 Cal.Rptr. 1, 791 P.2d 587].) In *Kimmel* v. *Goland, supra,* 51 Cal.3d 202, our Supreme Court determined the recording of a confidential telephone conversation in anticipation of litigation in violation of Penal Code section 632 was not privileged by section 47, subdivision (b)(2). The key in determining whether section 47, subdivision (b)(2), applied is whether the harm alleged was the result of a communicative act or a course of conduct. (*Kimmel* v. *Goland, supra,* 51 Cal.3d at pp. 210-212.) In *Kimmel* the court noted the damages sought were not for the publication of the statements intercepted but rather for the violation of privacy inherent in the interception itself. The court was not prepared to extend section 47, subdivision (b)(2), to privilege unlawful conduct undertaken to obtain evidence in anticipation of litigation. (51 Cal.3d at p. 212.)

■ While one might believe the communications ethically unacceptable, we conclude the present derivative causes of action were based solely

---

[1]All statutory references are to the Civil Code unless otherwise specified.

on communicative acts done in a judicial proceeding by litigants, to achieve the objects of litigation, and had a logical relation to the action. We therefore conclude the communicative acts in question were privileged under section 47, subdivision (b)(2).

Analysis of the application of section 47, subdivision (b)(2), to the present facts is assisted by reference to the recent decision in *Doctors' Co.* v. *Superior Court* (1990) 225 Cal.App.3d 1284 [275 Cal.Rptr. 674] (*Doctors'*). In *Doctors'* plaintiffs sought leave to amend their complaint to allege causes of action for intentional interference with prospective economic advantage, intentional spoliation of evidence and intentional infliction of emotional distress. Plaintiffs alleged that in a previous action they had filed a medical malpractice case against several defendants including Dr. Blain. Dr. Blain knew he had been negligent and admitted the fact to his malpractice carrier, Doctors' Co. Doctors' Co. failed to make any attempt to settle for more than three years. Instead, Doctors' Co. embarked on a course of conduct designed to conceal the admitted culpability of their insured and to misrepresent to plaintiff and others that Blain was not at fault. (*Id.* at p. 1289.)

Specifically, plaintiffs alleged Doctors' Co. counseled Blain not to tell the truth at his deposition and to avoid giving information which would, if disclosed, have established the liability of Dr. Achtel. During depositions attorneys for Doctors' Co. stopped the proceedings to counsel Blain in private to answer questions in a particular manner. Blain was told by Doctors' Co. that if he answered questions as directed, Achtel would not testify in his deposition in a manner harmful to Blain. If however, Blain did not answer as directed, Achtel would so testify. The same representation was made by Doctors' Co. to Achtel. Both men in response testified in an inaccurate and misleading fashion. (*Doctors'*, *supra*, 225 Cal.App.3d at p. 1290.)

After the deposition, plaintiffs intended to amend their complaint to add a fraud claim. Dr. Blain retained independent counsel who demanded Doctors' Co. settle. For approximately one year Doctors' Co. refused to do so. Eventually a settlement was reached but only after Doctors' Co. unsuccessfully attempted to condition the settlement on plaintiff's agreement not to bring a bad faith action against Doctors' Co. (*Doctors'*, *supra*, 225 Cal.App.3d at pp. 1290-1291.)

The court in *Doctors'* held that the privilege defined by section 47, subdivision (b)(2), applied to insurers who provide a defense to a party. (*Doctors'*, *supra*, 225 Cal.App.3d at pp. 1295-1298.) The *Doctors'* court further determined Doctors' alleged conduct was communicative and thus was privileged under section 47, subdivision (b)(2). The court stated: "Here

the [plaintiffs] do not complain of any *noncommunicative* conduct, such as destruction of physical evidence causing injury apart from communication of an injurious falsehood. Their only grievance is that Doctors' concealed Dr. Blain's liability (hence its own duty to indemnify) by communications to Dr. Blain and Dr. Achtel to lie in their depositions. Characterizing Doctors' conduct as 'destruction' of evidence does not alter the fact that the 'destruction' was accomplished entirely by statements made in the litigation. That circumstance brings the [plaintiffs'] action within the bounds of the privilege. Their claims, however styled, are founded upon utterance of injurious communications made in or in connection with the prior action. Doctors' cannot be liable without reliance on privileged communications made in the course of a judicial proceeding. (See *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364-365 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417].)" (*Doctors'*, *supra*, 225 Cal.App.3d at p. 1299, fn. omitted.)

We believe the same analysis is applicable to the present case. The alleged acts of American are all communicative in nature. The alleged concealment and misrepresentation of facts and the alleged actions of American to abuse the discovery process are all acts that are, in their essential nature, communicative. Significantly, there is no allegation of physical destruction of evidence. The core of Kupiec's lawsuit is that American made misstatements to her; and in communications with its agents and attorneys, American carried out a plan to delay the prior lawsuit and to avoid liability. Such conduct is communicative and comes within the privilege defined by section 47, subdivision (b)(2). American's general demurrer was properly sustained.

Judgment affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 1992. Mosk, J., Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.