[No. C016773. Third Dist. Aug. 22, 1994.]

DONALD RYAN et al., Plaintiffs and Respondents, v.
RALPH GARCIA, Defendant and Appellant.

## COUNSEL

Sinclair, Wilson & Sinclair and Robert F. Sinclair for Defendant and Appellant.

Randy E. Thomas for Plaintiffs and Respondents.

## OPINION

**NICHOLSON, J.**—May evidence of statements made during mediation be admitted in court to prove the parties orally settled the dispute? The trial

court concluded it may. We disagree. Admission of such evidence violates the prohibition of Evidence Code section 1152.5 which protects statements made in mediation from use in litigation. Accordingly, we reverse.

### FACTS AND PROCEDURE

In 1989, plaintiffs Donald and Richard Ryan purchased the Old Roseville Opera House from defendant Ralph Garcia. Finding defects in the building, the Ryans sued Garcia for negligent construction and fraud.

The parties privately agreed to mediate the dispute and hired a mediator. The mediator drafted a confidentiality agreement, quoting subdivisions (a) and (b) of Evidence Code section 1152.5.[1] The mediator and parties signed the agreement.

Mediation began at 10 a.m. and concluded about 2:30 p.m. on March 11, 1992. It appears the mediator conferred with the parties separately. Eventually, the mediator called the parties together and announced an agreement. For the next 15 minutes, someone, it is not clear who, stated the terms of that agreement. Garcia's attorney was assigned to reduce the agreement to

---

[1] Hereafter, unspecified code citations are to the Evidence Code.

At the time of the mediation here concerned, the full text of section 1152.5 provided:

"(a) Subject to the conditions and exceptions provided in this section, when persons agree to conduct and participate in a mediation for the purpose of compromising, settling, or resolving a dispute:

"(1) Evidence of anything said or of any admission made in the course of the mediation is not admissible in evidence, and disclosure of any such evidence shall not be compelled, in any civil action in which, pursuant to law, testimony can be compelled to be given.

"(2) Unless the document otherwise provides, no document prepared for the purpose of, or in the course of, or pursuant to, the mediation, or copy thereof, is admissible in evidence, and disclosure of any such document shall not be compelled, in any civil action in which, pursuant to law, testimony can be compelled to be given.

"(b) Subdivision (a) does not limit the admissibility of evidence if all persons who conducted or otherwise participated in the mediation consent to its disclosure.

"(c) This section does not apply unless, before the mediation begins, the persons who agree to conduct and participate in the mediation execute an agreement in writing that sets out the text of subdivisions (a) and (b) and states that the persons agree that this section shall apply to the mediation.

"(d) This section does not apply where the admissibility of the evidence is governed by Section 4351.5 or 4607 of the Civil Code [now section 1818 or 3177 of the Family Code] or by Section 1747 of the Code of Civil Procedure.

"(e) Nothing in this section makes admissible evidence that is inadmissible under Section 1152 or any other statutory provision, including, but not limited to, the sections listed in subdivision (d). Nothing in this section limits the confidentiality provided pursuant to Section 65 of the Labor Code.

"(f) Paragraph (2) of subdivision (a) does not limit either of the following:

"(1) The admissibility of the agreement referred to in subdivision (c).

"(2) The effect of an agreement not to take a default in a pending civil action."

writing, and the parties left the session feeling the case was settled. However, the parties later disagreed concerning the terms of the settlement, and no written agreement was ever executed.

The Ryans amended their pending complaint by adding a cause of action to enforce the oral settlement agreement. Recognizing a resolution of the new cause of action could eliminate the need to try the other causes of action, the parties agreed to a court trial on the oral settlement cause of action.

At trial, Garcia objected to the introduction of anything said during the March 11 meeting. He asserted it entailed statements made during mediation which are inadmissible under section 1152.5. The court overruled the objection as to statements made after the mediator announced the parties had an agreement. The court reasoned mediation ended when an agreement was reached, and the statement of the terms of the agreement was therefore not a part of mediation. Thus, the court admitted evidence of statements made at the end of the session on March 11.

After hearing the evidence, the court found the parties reached an oral settlement agreement on March 11, 1992. It further found the Ryans' evidence accurately reflected the terms of that agreement, disbelieving Garcia's version. The remaining causes of action were dismissed without prejudice, and judgment was entered in the Ryans' favor. Garcia appeals.

### DISCUSSION

■ Generally, oral settlement agreements may be enforced in the same way oral contracts are enforced. If the plaintiff proves an oral settlement agreement by substantial evidence and the defendant proffers no valid defense, a court will enter judgment enforcing the oral agreement. (See *Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441]; *Gorman* v. *Holte* (1985) 164 Cal.App.3d 984, 989 [211 Cal.Rptr. 34].) ■ The issue here is whether the evidence used to prove the existence and terms of the oral settlement agreement was admissible.

In 1985, the Legislature enacted section 1152.5 which provides, in relevant part: "Evidence of anything said or of any admission made in the course of the mediation is not admissible in evidence . . . ." Section 1152.5 neither defines "mediation" nor delineates the boundaries of the process. The Law Revision Commission commented: "Section 1152.5 provides protection to information disclosed during mediation to encourage this alternative to a judicial determination of the action. The same policy that protects offers to

compromise (Section 1152) justifies protection to information disclosed in a mediation." (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code, § 1152.5 (1986) p. 322.)[2] Accordingly, the public policy underlying section 1152.5 is to promote mediation as a preferable alternative to judicial proceedings by providing confidentiality.

"Confidentiality is absolutely essential to mediation. This is not simply to allow parties to keep their dispute out of the public limelight. It is essential for the parties to feel confident that anything they reveal privately to the mediator or in open mediation sessions *cannot be used against them* should the mediation fail. Otherwise, parties would be reluctant to make the kinds of concessions and admissions that pave the way to settlement." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1993) § 3:25, p. 3-5, italics in original.)

The operative phrase in section 1152.5 for our purposes is "in the course of the mediation." Statements made "in the course of the mediation" are inadmissible. (§ 1152.5, subd. (a)(1).) Adopting the trial court's reasoning, the Ryans contend the statements they introduced as evidence to prove the existence and terms of the settlement agreement were not made "in the course of mediation" because the mediation was successfully completed when the mediator convened the parties to recite the terms of the settlement. Because there was no explicit agreement between the parties to end the mediation before the recitation of the settlement, the Ryans' argument necessarily includes the notion mediation ends, as a matter of law, just before the parties state their agreement. They contend this must be so because, otherwise, settlements reached in mediation would be unenforceable.

Garcia's response is simple. He asserts the statements concerning the existence and terms of the settlement agreement were part of the mediation and, therefore, were inadmissible as evidence. He has the better argument, as we explain.

Heretofore, the appellate courts have not determined the scope of the confidentiality provided by section 1152.5 to statements made "in the course of the mediation." Hence, we must determine the intention of the Legislature. (Code Civ. Proc., § 1859.)

Using similar "in-the-course-of" language, Civil Code section 47 grants privileged status to statements made "in the initiation or course of any . . .

---

[2]Law Review Commission comments are persuasive evidence of the Legislature's intent if the Legislature adopts the commission's recommendations. (*People* v. *Garfield* (1985) 40 Cal.3d 192, 199 [219 Cal.Rptr. 196, 707 P.2d 258].)

proceeding authorized by law . . . ." "This statute protects attorneys as well as judges, jurors, witnesses and other court personnel from liability arising from publication made in the course of a judicial proceeding. The policy underlying the privilege is that of affording to our citizens utmost freedom of access to the courts. As a consequence, attorneys are given broad protection from the threat of litigation arising from the use of their best efforts on behalf of their clients." (*Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 300 [113 Cal.Rptr. 113].) "The privilege has been given broad application to further the public policies it is designed to serve." (*Kupiec* v. *American Internat. Adjustment Co.* (1991) 235 Cal.App.3d 1326, 1331 [1 Cal.Rptr.2d 371]; see also *Moore* v. *Conliffe* (1994) 7 Cal.4th 634, 654 [29 Cal.Rptr.2d 152, 871 P.2d 204].)

Likewise, section 1152.5 must be interpreted broadly to serve its purpose, that is, to encourage the use of mediation by ensuring confidentiality. Judicial sifting of statements made at a confidential mediation to select those which can be used as evidence of an agreement contravenes the legislative intent underlying adoption of section 1152.5. Indeed, the risk of this judicial sifting would deter some litigants from participating freely and openly in mediation. As quoted above, the Law Revision Commission comment states the purpose of section 1152.5 is to promote mediation as an alternative to judicial proceedings. To condone further judicial proceedings to enforce oral agreements made during mediation directly undercuts the effect of the statute intended by the Legislature.

By using the broad phrase "in the course of the mediation," the Legislature manifested its intent to protect a broad range of statements from later use as evidence in litigation. To establish arbitrary boundaries within the general process of "mediation," with a vague delineation between what is included and what is not included, is contrary to that intent and may not be inferred from the language of the statute.

Narrow interpretation of "in the course of the mediation" leads to anomalous results not intended by the Legislature. For example, under the interpretation urged by the Ryans, if the parties here had committed their settlement agreement to writing but failed to include in the writing a waiver of confidentiality, they could prove the settlement agreement by reciting their recollections of the oral agreement but could not introduce the written agreement because it was "prepared for the purpose of, or in the course of, or pursuant to, the mediation . . . ." (§ 1152.5, subd. (a)(2).) Common sense dictates the Legislature did not intend to allow admission of an oral agreement while excluding a written memorial of the same agreement.

Furthermore, narrow interpretation would lead the trial court to filter the mediation proceedings to determine if any portion of the proceeding crossed

the line from negotiation into agreement. This is the type of disclosure and use of statements made in mediation the confidentiality statute is meant to preclude.

Certainly, the confidentiality given to mediation must end at some point. However, in this context, we need not undertake the task of defining the boundaries of mediation. Instead, we merely determine that the statements made here among the parties and the mediator, at the time and in the place set for mediation, were well within "the course of the mediation," and, therefore, evidence of those statements was inadmissible in a later proceeding under section 1152.5.

If we interpret section 1152.5 to make inadmissible the evidence of the oral settlement agreement, the Ryans declare, our holding will "divest mediation of its effectiveness as an alternative dispute resolution technique. If [section] 1152.5 has the effect of forever cloaking a settlement agreement in the darkest secrecy and prevents a settlement contract from ever being mentioned again, the mediation process is reduced to a meaningless exercise, a mechanical ceremony." ██ Section 1152.5, though, provides a simple means by which settlement agreements executed during mediation can be made admissible in later proceedings. The parties may consent, as part of a writing, to subsequent admissibility of the agreement. A document prepared at mediation is inadmissible in later judicial proceedings *"unless the document otherwise provides."* (§ 1152.5, subd. (a)(2), italics added.)[3]

The Ryans' apprehension that settlements reached in mediation may be unenforceable is valid only if the parties do not properly consent in writing to subsequent admissibility of the agreement.[4] This is not a detriment to the effectiveness of mediation as the Ryans suggest; instead, it is merely a procedural condition imposed to protect confidentiality and, thereby, encourage open participation in mediation. Enforcement of this procedural condition protects the confidentiality of mediation while emphasizing what the law requires of parties and mediators who wish to produce an enforceable settlement agreement.

Indeed, if the parties to mediation sign a written settlement agreement waiving confidentiality, the agreement can be enforced in the courts by a

---

[3]Subdivision (a)(1) of section 1152.5, the provision making oral statements inadmissible, does not include this exception to inadmissibility. The parties also may later mutually agree to admissibility. (§ 1152.5, subd. (b).) But that was not done here.

[4]Florida deals with the issue of settlements reached during mediation more directly. The mediation confidentiality statute makes inadmissible communications made during mediation, "other than an *executed* settlement agreement." (Fla. Stat. § 44.102(3) (1994), italics added.) This provision has been interpreted to allow admission of *written* settlement agreements only. (*Hudson* v. *Hudson* (Fla.Dist.Ct.App. 1992) 600 So.2d 7.)

simple motion. (§ 1152.5, subd. (a)(2); Code Civ. Proc., § 664.6.) The alternative urged here by the Ryans is costly and time-consuming. It permits full-blown trials to determine, in each mediation case, if there was an oral agreement and, if so, on what terms. Section 1152.5, however, provides broad confidentiality in the expectation of alleviating the need for ponderous judicial proceedings. It is evident the Legislature never intended to produce the unwieldy results the Ryans suggest.

 The trial court erred by admitting evidence, over Garcia's objection, of statements made in the course of mediation. (§ 1152.5.) Without this evidence, there is no substantial evidence of an oral settlement agreement and the judgment cannot be sustained.[5]

### DISPOSITION

The judgment is reversed. Garcia shall recover his costs on appeal.

Blease, Acting P. J., concurred.

**RAYE, J.**—I respectfully dissent.

Evidence Code section 1152.5 provides in relevant part that ". . . evidence of anything said or of any admission in the course of the mediation is not admissible . . . ." The issue presented is whether the oral settlement agreement in this case occurred "in the course of mediation." The majority disclaims any intent to "undertake the task of defining the boundaries of mediation" but nonetheless suggests the boundaries are both temporal and spatial; an oral settlement agreement reached "at the time and in the place set for mediation" is unenforceable. Therefore, one supposes that parties to mediation who reach agreement must either adjourn to a different place and/or time before expressing the agreement, or must reduce the agreement to writing before it can be enforced.

While I recognize the value of "bright line" formulations and the evil of "judicial sifting" in this context, the majority goes too far in imposing limits on the ability of parties to enter into enforceable oral agreements. It might make sense to require settlement agreements for certain types of disputes to be in writing or to impose other safeguards to insure the parties have in fact reached agreement and to discourage "buyers remorse" the morning after. However, it is inappropriate to impose such rules under the guise of statutory construction.

---

[5]Given this conclusion, we need not determine whether the statements establishing an agreement were also made inadmissible by the confidentiality agreement between the parties. Nor do we reach Garcia's assertion the oral agreement violated the statute of frauds.

Proof of an oral settlement agreement necessarily precludes a finding that mediation was ongoing. Mediate means "to negotiate a compromise of hostile or incompatible viewpoints." (Webster's Third New Intern. Dict. (1961) p. 1402.) Mediation can thus be viewed as a process for negotiating a compromise. As recognized by section 26 of the Judicial Administration Standards relating to child custody mediation, an agreement (including, "under certain circumstances, an oral agreement") "should be the end product of the mediation process." (Cal. Standards Jud. Admin., § 26 [Deering's Cal. Ann. Codes, Rules (Appen.) (1994 supp.) p. 334].) Once a compromise is reached the mediation process is over. An oral agreement cannot be crafted until after compromise has been reached. Therefore an oral statement of the terms of the agreement does not fall within Evidence Code 1152.5.

The majority correctly perceives the challenge to confidentiality created when a party seeks to enforce an oral settlement agreement arising out of mediation. The majority's resolution, to require any settlement agreement entered into at the conclusion of a single continuous mediation session to be in writing, may be a good idea; however, it is not required by Evidence Code section 1152.5. I would affirm the judgment of the trial court.