Filed 7/6/15  Merkin v. Omidi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DON MERKIN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JULIAN OMIDI et al.,<br><br>    Defendants and Appellants. | D067276<br><br><br>(Super. Ct. No. 37-2014-00028725-<br> CU-FR-CTL) |

APPEALS from an order of the Superior Court of San Diego County, Eddie

Sturgeon, Judge.  Reversed and remanded with instructions.

Weiss & Spees, Michael H. Weiss and Laura J. Meltzer for Defendants and

Appellants.

Don Merkin, in pro. per., for Plaintiff and Respondent.

Don Merkin, an attorney, sued his former clients, ASC Capital Management, Inc.

(ASC), San Diego Ambulatory Surgery Center, LLC (SDASC), Julian Omidi (hereafter,

Clients), and Ricky Oxman, an agent of Clients, for fraudulent deceit and other claims in

connection with a settlement agreement over Merkin's unpaid fees.  The theory of Merkin's suit was that Clients had defrauded him of a portion of his fees by misrepresenting and/or suppressing material information to induce him to sign the settlement agreement.  Defendants made an anti-SLAPP motion to strike, which the trial court denied.  (Code Civ. Proc., § 425.16.)[1]  Defendants appeal contending that any alleged misconduct was protected activity under section 425.16, and Merkin cannot prevail on his claims because settlement communications are covered by the litigation privilege, Civil Code section 47, subdivision (b).  We agree and reverse the order denying the anti-SLAPP motion.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Events Leading Up to the Complaint in This Case*

1.      Merkin Initiates Lawsuit to Collect Attorney Fees

Between 2012 and 2013, Merkin represented Clients in bankruptcy and other proceedings involving a property where SDASC operated a surgical center.  SDASC was a tenant in a medical office building owned and operated by LDG Midway Plaza, LLC (LDG) (the Midway Property).  ASC owned a secured note on the Midway Property, Omidi owned/controlled ASC and SDASC, and Oxman was an agent of Clients.[2]

---

1      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2      Contrary to Merkin's reference to the collective "Appellants" as his former clients, the record is clear that Oxman was not individually represented by Merkin. !(65)!

2

In May 2013, Merkin terminated his representation of Clients, due in part to their failure to pay his attorney fees of approximately $66,000. Several months later, Merkin filed suit against Clients to collect his outstanding fees (Fee Litigation), and from October to early December 2013, the parties engaged in settlement discussions.

2.      Mediation and Settlement of the LDG Bankruptcy Case

Meanwhile, LDG's third amended chapter 11 plan had been approved by LDG's unsecured creditors and preliminarily approved by the bankruptcy court. The third amended plan provided for seven years of cash distributions by LDG to ASC. However, on November 15, 2013, Oxman attended a mediation on behalf of Clients with LDG (the LDG Mediation). At the LDG Mediation, LDG and Clients reached a settlement agreement amending the plan. The new plan (Fourth Plan) called for an outright sale of the Midway Property from LDG to ASC, and ASC would contribute funds to LDG's bankruptcy estate. Notably, ASC would no longer be receiving cash distributions since it was purchasing the Midway Property. The settlement agreement and Fourth Plan would be subject to bankruptcy court approval.

3.      Settlement of Fee Litigation

In early discussions to settle the Fee Litigation, Clients negotiated for approximately one-half of the outstanding Merkin fee balance to be paid upon execution of a settlement agreement, with the other half to be paid in the future when ASC received cash distributions from the LDG bankruptcy estate. On December 4, 2013, Merkin signed a settlement agreement and release with Clients (hereafter, Fee Settlement). The final payment terms were, in pertinent part, that Merkin would receive $35,000 of his

3

fees immediately on execution of the Fee Settlement, and for the outstanding balance, "Merkin shall look solely to the distributions from the estate in the LDG Midway Plaza [c]hapter 11 [c]ase . . . without recourse to the Clients or to any of them."

B

*Merkin's Complaint and Defendants' Anti-SLAPP Motion*

In August 2014, Merkin filed a complaint for: (1) fraudulent deceit (Civ. Code, §§ 1709, 1710) against Clients; (2) breach of the implied covenant of good faith and fair dealing, against ASC and SDASC; and (3) conspiracy to defraud (Civ. Code, § 1709) against Clients and Oxman (the Complaint). The Complaint described the LDG Mediation (unknown to Merkin at the time it occurred), the Fee Settlement, Merkin's subsequent discovery of the LDG settlement agreement when it was publicly filed, and how, despite assurances Clients would pay Merkin's full fees of $66,000, they knew a portion of the fees came from a "non-existent" source. The Complaint alleged Clients concealed and suppressed material information, including the elimination of all LDG cash distributions to ASC under the Fourth Plan, which they were under a duty to disclose, and that the nondisclosure was deceitful. The Complaint also alleged that Clients and Oxman conspired to defraud him of $31,000 in fees through their deceitful suppression of material information. Oxman's alleged and only role in the conspiracy was based on his attendance at the LDG Mediation where he negotiated the terms of the Fourth Plan on behalf of Clients.

Defendants filed an anti-SLAPP motion to strike. To invoke section 425.16, they argued that petitioning the bankruptcy court, i.e., seeking approval of the Fourth Plan,

4

was protected conduct. They also argued that statements made in settlement negotiations during the Fee Litigation were protected, and could not form the basis of a complaint due to their privileged nature. In opposition, Merkin argued that defendants' wrongful, injury-causing conduct was not grounded in any communicative act required for protection under the litigation privilege, Civil Code section 47, subdivision (b). Rather, their deceitful suppression of material information that they knew he was not aware of had the effect of injuring him. On December 1, 2014, the court denied defendants' anti-SLAPP motion.

## DISCUSSION

### A

### *The Anti-Slapp Statute*

A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1 (*Briggs*).) The Legislature enacted section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 865.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) This court considers " 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' " (*Ibid.*, citing § 425.16, subd. (b)(2).) The court

5

does not weigh or compare the evidence, but rather accepts as true the evidence favorable to the plaintiff while evaluating the defendant's evidence " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Ibid.*) The appellate court employs the same procedure as the trial court in determining how the motion should have been decided. (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651-1652.)

A court's consideration of an anti-SLAPP motion involves a two-pronged analysis. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.' " (*Ibid.*, citing § 425.16, subd. (b)(1).) The "*principal thrust* or *gravamen*" of the claim is what governs, not individual factual allegations. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 (*Martinez*).)

A challenged cause of action arises from activity protected by the statute when " ' "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" ' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928-929.) " 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417 (*Dowling*).)

In relevant part, subdivision (e) of section 425.16 defines an " 'act in furtherance of a person's right of petition or free speech under the United States or California

Constitution in connection with a public issue' [as]: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]" (§ 425.16, subd. (e); *Briggs*, *supra*, 19 Cal.4th at p. 1123.) All that is necessary for the statute to apply is that the cause of action arises from an act in furtherance of the constitutional right to petition or free speech. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 58-59.)

If the defendant demonstrates that a cause of action falls within the anti-SLAPP statute's protection, the burden then shifts to the plaintiff to prove that he has a probability of prevailing on the merits. (*Equilon, supra*, 29 Cal.4th at p. 67.) The plaintiff must " 'state[ ] and substantiate[ ] a legally sufficient claim.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) This requires the plaintiff to " ' "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Ibid.*)

B

*The Complaint's Causes of Action Arise From Defendants' Free Speech or Petitioning Activities*

Our threshold task is to determine whether the basis for the causes of action asserted in the Complaint was an act or conduct in furtherance of defendants' rights of

7

petition or free speech. (§ 425.16, subd. (e).) Defendants contend that all of the acts in the Complaint's three causes of action arose out of discussions to settle the Fee Litigation and the LDG bankruptcy case.

Settlement negotiations are protected activity under section 425.16 when they involve " 'statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body.' " (§ 425.16, subd. (e)(2); *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963 (*Seltzer*).) For example, in *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 841, defendant IHOP allegedly made false promises to consider potential buyers of plaintiff's franchise in exchange for a stipulation of judgment in an earlier action. In *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 (*Navellier*), the defendant allegedly misrepresented his intent to be bound by a release in a previous federal action (and omitted to state his true intentions). Finally, in *Dowling*, *supra*, 85 Cal.App.4th at pages 1420-1422, an attorney was sued for various torts committed in connection with a letter she wrote while negotiating a stipulated settlement in a prior unlawful detainer action. In each of these cases, statements made in the course of settlement negotiations were protected under section 425.16. This case is analytically indistinguishable.

Relying on *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 (*Paul*), Merkin argues that section 425.16 does not apply because defendants' alleged deceitful conduct was a "noncommunicative illegal act." In *Paul*, defendants admitted their activities constituted a money laundering scheme, but argued the acts were done in furtherance of their free speech rights to support a political campaign. (*Paul*, at pp. 1361-

8

1362.) *Paul* held where "defendants have effectively conceded the illegal nature of their election campaign finance activities," section 425.16 was inapplicable. (*Paul*, at p. 1367.) *Paul* is inapposite here; defendants have neither conceded their actions were illegal nor does the evidence conclusively establish it.

Furthermore, courts look to the gravamen of the claims to determine if the claims are a SLAPP. (*Peregrine Funding*, *Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine*).) The claims will be subject to section 425.16 unless protected conduct is merely incidental to unprotected conduct. (*Peregrine*, at p. 672; *Martinez, supra,* 113 Cal.App.4th at p. 188.) Determining the gravamen of the claims requires an examination of the specific acts of alleged wrongdoing, not the form of the claims. (*Peregrine*, *supra*, at pp. 671-673.) "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and unprotected activity under the label of one 'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308.)

As we review the record, the gravamen of Merkin's claims is defendants defrauded Merkin of $31,000 in fees. The alleged misconduct appears to have occurred in several steps during settlement discussions: first, Clients made certain assurances and promised to pay Merkin $66,000 in fees; second, they negotiated a delayed, contingent payment provision; and third, they failed to disclose the fact that the contingent payment source (LDG cash distributions) from which the second half of the fees were to be paid no longer existed. Regardless of the multi-step process, these acts all occurred during and as part of negotiations to settle pending litigation, and were thus done in furtherance of

9

Clients' rights of petition or free speech. The breach of implied covenant and conspiracy to defraud claims asserted in the Complaint are premised on the same set of acts. Additionally, as to Oxman, it is undisputed that when he attended the LDG Mediation, he was acting as an agent of Clients in furtherance of the alleged conspiracy (third cause of action) and, therefore, any alleged acts by him were done in furtherance of Clients' rights of petition or free speech. Accordingly, we find that this case falls squarely within the ambit of the anti-SLAPP statute, meeting the statute's first prong. We thus turn to the second prong of the anti-SLAPP analysis, Merkin's likelihood of prevailing on the merits of his case.

C

*Likelihood of Prevailing*

Defendants offer several reasons why Merkin cannot prevail on the merits; we need discuss only one, which, if applicable, warrants dismissal of all of the causes of action in the Complaint. Defendants argue that Merkin's causes of action are barred by the litigation privilege, which applies to communications made in any "judicial proceeding." (Civ. Code, § 47, subd. (b)(2).) We agree.

The purpose of the litigation privilege "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 (*Silberg*).) The privilege applies when statements are made "in furtherance of the objects of the litigation," that is, they are "connected with, or have some logical relation to, the action." (*Id.* at pp. 219-220.) Numerous courts have held that statements relating to

10

litigation fall within the privilege, including those made during settlement negotiations. (*Seltzer, supra*, 182 Cal.App.4th 953 at p. 972; *Navarro, supra*, 134 Cal.App.4th at p. 843; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 24 ["the alleged misrepresentation was made during a lawsuit to induce settlement and therefore falls within the litigation privilege"]; *Dowling, supra*, 85 Cal.App.4th at p. 1422.)

Merkin contends defendants' misconduct as alleged in the Complaint is not covered by the litigation privilege because defendants deceitfully *concealed* information from him, which he posits is noncommunicative conduct.  Because the litigation privilege only covers communications and publications, it does not extend to independently wrongful, noncommunicative acts.  (See, e.g., *Kimmel v. Goland* (1990) 51 Cal.3d 202, 212 [prelitigation illegal recording of confidential telephone conversations]; *Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 60 [suspension of physician's hospital privileges causing damages]; *Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1479-1480 [physician's negligent examination of patient causing physical injury].)  "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058.)  "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature."  (*Ibid.*)  Where the gravamen of the complaint is a privileged communication, the privilege extends to necessarily related noncommunicative acts.  (*Id.* at p. 1062.)

However characterized, any harm to Merkin originated from Clients' assurances in the course of negotiating a settlement of the Fee Litigation that he would be paid in

11

exchange for a release, which is undoubtedly communicative conduct. Moreover, the intent behind Clients' concealment (and any conspiracy to conceal), according to Merkin, was to persuade him to agree to a settlement unfavorable to him. The gravamen of this act was also communicative in its essential nature and, thus, privileged. (*Silberg, supra*, 50 Cal.3d at pp. 210, 220 [alleged failure to disclose a preexisting relationship affecting neutrality of an agreed upon expert held privileged]; *Kupiec v. American International Adjustment Company* (1991) 235 Cal.App.3d 1326, 1333 [concealment of facts regarding status of the plaintiff's art held communicative in nature and thus privileged]; *Pollack v. Superior Court* (1991) 229 Cal.App.3d 26, 29 [representations and omissions made by attorney in the course of a judicial proceeding held privileged].) Importantly, the alleged concealment of material information by Clients to obtain the Fee Settlement was connected with, and had some logical relation to, pending litigation. (*Silberg*, at pp. 219-220.) Relevant case law supports that statements and omissions during settlement negotiations, such as those at issue here, are protected by the litigation privilege. Consequently, Merkin has not demonstrated a likelihood of prevailing on the merits, and the Complaint is barred by section 425.16.

12

DISPOSITION

The order denying defendants' motion to strike is reversed, and the trial court is instructed to enter a new order dismissing the Complaint. Pursuant to section 425.16, subdivision (c), defendants are entitled to recover their attorney fees and costs, and the trial court is directed to determine the appropriate amount.


IRION, J.

WE CONCUR:


McDONALD, Acting P. J.


McINTYRE, J.

13