49 Cal.Rptr.3d 342 (2006)
143 Cal.App.4th 410
Michelle SIMMONS, etc., et al., Plaintiffs and Respondents,
v.
Lida GHADERI, Defendant and Appellant.
No. B180735.
Court of Appeal of California, Second District, Division Three.
September 27, 2006.
As Modified September 27, 2006.
*343 Reback, McAndrews & Kjar, Robert C. Reback, Manhattan Beach, and Melanie Shornick for Defendant and Appellant.
Law Office of James Aaron Pflaster, Martin R. Berman and James Aaron Pflaster, Los Angeles, for Plaintiffs and Respondents.
CROSKEY, J.
The parties to a medical malpractice case attended a mediation. Defendant Lida Ghaderi, M.D. provided her medical malpractice insurer, Cooperative American Physicians/Mutual Protection Trust ("CAP-MPT") with her written consent to settle the case for the amount of $125,000. An offer in that amount was transmitted to the plaintiffs, who unconditionally accepted. While the mediator was reducing the settlement agreement to writing, the CAP-MPT claims specialist informed Dr. Ghaderi that a settlement had been reached. Dr. Ghaderi then informed the CAP-MPT representative that she was revoking her consent to settle, and left the mediation. Plaintiffs ultimately amended their medical malpractice complaint to include a cause of action for breach of the oral settlement contract. After a bifurcated trial on that cause of action, the trial *344 court entered judgment in favor of plaintiffs in the amount of $125,000. Dr. Ghaderi appeals, arguing that the Evidence Code provisions governing mediation confidentiality prevented plaintiffs from introducing any evidence of the oral settlement agreement. We conclude Dr. Ghaderi is estopped from relying on mediation confidentiality and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On March 27, 2002, plaintiffs, the minor son and mother of Kintausha Clemmons,[1] filed a wrongful death complaint against Dr. Ghaderi alleging medical malpractice caused the death of Kintausha Clemmons.[2]
On July 9, 2003, the parties attended a mediation with the Honorable Robert T. Altman, retired. Plaintiffs and their counsel appeared. Dr. Ghaderi was present with Obi Amanugi, a CAP-MPT claims specialist. Two attorneys also attended with Dr. Ghaderi: Attorney Kent T. Brandmeyer, the CAP-MPT attorney; and Attorney Robert C. Reback, Cumis counsel.[3]
Under the provisions of her professional liability policy with CAP-MPT, Dr. Ghaderi had the right to withhold her consent to the settlement of any third party malpractice claim. Prior to engaging in settlement discussions, Dr. Ghaderi executed a written consent to settlement form provided by CAP-MPT. In pertinent part, the document provided as follows: "I consent to the settlement of the ... claim for an amount not to exceed that authorized by the Claims Review Committee of [CAP-MPT]. It is understood and agreed that my consent to the negotiated settlement of this claim involves the compromise of a doubtful and disputed claim. Neither my consent to settlement nor the payment of any sum of money by [CAP-MPT] in connection with this negotiated settlement shall constitute or be construed as an admission of liability on my part. [¶] I understand that [CAP-MPT] has an obligation to report settlements to the National Practitioner Data Bank as well as the Medical Board of California in a manner consistent with statute and regulations. [¶] I understand and agree that this consent to settlement may only be revoked in writing. This consent to settlement shall remain in full force and effect unless and until written revocation of my consent to settlement is received by [CAP-MPT at its office]." (Italics added.) Prior to signing the consent agreement, Dr. Ghaderi added the following language at the bottom, "The settlement value is limited to one hundred & twenty-five thousand *345 dollars & zero cents." Dr. Ghaderi signed and dated the consent agreement.
Settlement discussions then proceeded. During settlement discussions, Dr. Ghaderi waited in another room with Attorney Reback. Eventually, CAP-MPT advised Judge Altman to offer plaintiffs $125,000 to settle the matter in exchange for a dismissal with prejudice and a waiver of costs. Plaintiffs accepted the offer. While Judge Altman prepared a document reflecting the settlement agreement for the parties to sign, Amanugi went to the other room to inform Dr. Ghaderi and Attorney Reback that a settlement had been reached. When she was advised of the settlement, Dr. Ghaderi said, "Good, because I am revoking my consent." Amanugi discussed this with Dr. Ghaderi, and also telephoned the CAP-MPT office to obtain guidance on how to proceed. CAP-MPT's general counsel informed Amanugi that CAP-MPT considered Dr. Ghaderi's oral revocation of her consent to be valid. Shortly thereafter, Dr. Ghaderi left the building. Judge Altman, plaintiffs and plaintiffs' counsel signed the written settlement agreement; no one signed on behalf of Dr. Ghaderi or CAP-MPT.
The following day, plaintiffs' attorney and Attorney Brandmeyer, the CAP-MPT attorney, appeared in court. Both counsel recounted the facts of the July 9, 2003 mediation to the court  including Dr. Ghaderi's written consent to settle for $125,000, the offer in that amount, the acceptance of the offer, and Dr. Ghaderi's departure while the settlement was being reduced to writing. Counsel sought guidance on how to proceed.
The trial court speculated that there may be an enforceable settlement agreement. Attorney Brandmeyer agreed that CAP-MPT may eventually take that position, but he first wanted to speak with Dr. Ghaderi in the hopes of obtaining her agreement to the settlement. The trial court vacated the trial date and set the matter for an order to show cause why the case should not be dismissed on July 29.
On July 16, 2003, Dr. Ghaderi sent CAP-MPT a letter formally revoking her consent to settle. On July 17, 2003, plaintiffs filed an application for an ex parte order shortening time for a hearing on a petition to approve the compromise of the minor's claim.[4]
At the July 17, 2003 hearing, Attorney Brandmeyer informed the trial court that Ghaderi had informed CAP-MPT that she had decided to revoke her consent. Attorney Brandmeyer was not sure "where that leaves us." The trial court asked Attorney Brandmeyer if CAP-MPT was "going to pay the money without [Dr. Ghaderi's] signature on a settlement agreement?" Attorney Brandmeyer said CAP-MPT was "still trying to figure it out," but he didn't think CAP-MPT would pay if Dr. Ghaderi did not consent. The trial court ordered Dr. Ghaderi to personally appear at the order to show cause hearing on July 29, 2003.
On July 29, 2003, Dr. Ghaderi was present, with Attorney Brandmeyer and Cumis counsel, Attorney Reback. The trial court spoke with Dr. Ghaderi and her counsel in chambers. The court then stated on the record that Dr. Ghaderi was unwilling to consent to the settlement. The court added, "I told her that I would have to get briefing on the contractual issue of whether she is obligated by virtue of the document she signed to consent to this settlement. I said [that] if I found upon motion *346 that she was so bound, I would approve the settlement over her objection." The court indicated that it appeared that the proper course of action would be for plaintiffs to bring a motion to enforce the settlement agreement under Code of Civil Procedure section 664.6. Plaintiffs' counsel asked if he could obtain a copy of the written consent agreement Dr. Ghaderi had signed. Attorney Brandmeyer agreed to provide a copy. Plaintiffs' counsel also asked the court if it would "entertain a declaration from the mediator? Would that be inappropriate as to what occurred?" The trial court agreed that it "probably would be appropriate." Attorney Reback did not interpose an objection to disclosure of the consent agreement or the obtaining of a declaration from the mediator.
On August 15, 2003, plaintiffs filed their motion to enforce the settlement, on the basis that an oral agreement had been reached with CAP-MPT while CAP-MPT had Dr. Ghaderi's consent to settle the action. Thus, plaintiffs argued any further consent from Dr. Ghaderi would have been superfluous. Plaintiffs supported their motion with: a copy of Dr. Ghaderi's signed consent to settle the action for $125,000; a declaration from plaintiffs' counsel setting forth the events at the July 9, 2003 mediation; the written settlement agreement executed by plaintiffs only; and a short declaration from Judge Altman, confirming that the case was settled for $125,000 and that Dr. Ghaderi then revoked her consent.
On September 5, 2003, Dr. Ghaderi, represented by Attorney Reback, filed her opposition to the motion. She raised no objections to the evidence relied upon by plaintiffs. In fact, her memorandum of points and authorities admitted that: (1) Dr. Ghaderi "gave consent to CAP[-]MPT to engage in settlement discussions on her behalf. Any settlement value was to be limited to $125,000.00 with no admission of liability"; (2) a "settlement offer of $125,000.00 in exchange for a dismissal of the matter with prejudice and a waiver of costs was made and [p]laintiffs accepted"; and (3) Dr. Ghaderi then declined to settle and left the mediation without signing the written settlement agreement. Dr. Ghaderi's opposition was based on the premise that, since she did not sign the written settlement agreement, the settlement was not "consummated" and her subsequent written revocation of consent was therefore timely.
Another opposition was filed on Dr. Ghaderi's behalf by Attorney Brandmeyer. The opposition was based on the following rationale. The summary procedure for enforcing settlements under Code of Civil Procedure section 664.6 generally requires the written consent (or oral consent in open court) of the party. (Robertson v. Chen (1996) 44 Cal.App.4th 1290, 1293-1294, 52 Cal.Rptr.2d 264.) Nevertheless, when the party is represented in settlement negotiations by an insurer who settles within policy limits, the party's consent is superfluous as long as the insurer consents. (Fiege v. Cooke (2004) 125 Cal. App.4th 1350, 1353, 23 Cal.Rptr.3d 496.) However, in many professional liability policies, including the one under which CAP-MPT was providing a defense for Dr. Ghaderi, the policy gives the insured the right to approve or reject any settlement negotiated by the insurer. This is designed to prevent settlements which might be regarded as an admission of wrongdoing, thus injuring the insured's professional reputation. In such a case, the insured's written consent is necessary in order to enforce a settlement under Code of Civil Procedure section 664.6. (See Robertson v. Chen, supra, 44 Cal.App.4th at pp. 1294-1295, fn. 3, 52 Cal.Rptr.2d 264.)
*347 A hearing on the motion was held on September 15, 2003. The court concluded the summary procedure of Code of Civil Procedure section 664.6 did not apply because neither Dr. Ghaderi nor CAP-MPT had signed the written agreement. Nonetheless, the court expressed its opinion that an enforceable oral settlement agreement was reached and that Dr. Ghaderi's subsequent attempt to withdraw her consent was ineffective. The court and counsel then agreed that the best way to proceed would be for plaintiffs to amend their complaint to allege a cause of action for breach of contract. On March 9, 2004, plaintiffs filed their first amended complaint which asserted a cause of action for breach of contract.
On June 25, 2004, Dr. Ghaderi moved for summary adjudication of the breach of contract cause of action. Dr. Ghaderi's motion was based on the theory that there was no valid contract because she did not sign the written settlement agreement. Dr. Ghaderi's motion was supported by her own declaration,[5] in which she stated that: (1) she had given her consent for CAP-MPT to settle the case for $125,000; (2) her counsel had made a $125,000 settlement offer to plaintiffs; and (3) she revoked her consent without executing the settlement agreement. In Dr. Ghaderi's separate statement of undisputed facts, she asserted the above facts were undisputed.
On August 24, 2004, plaintiffs filed their opposition to the motion, arguing that, during the time that CAP-MPT had been authorized to settle the action on Dr. Ghaderi's behalf for $125,000, CAP-MPT made the $125,000 offer which was accepted, resulting in an enforceable oral contract. The opposition was supported by the transcript of Dr. Ghaderi's deposition, taken on August 13, 2004. At her deposition, Dr. Ghaderi had testified (in contrast to her declaration) that she did not know if a $125,000 offer had been made to plaintiffs at the mediation. Attorney Reback then stated, "We're not disputing the fact that the offer was made or that the plaintiffs accepted it." Plaintiffs' counsel responded, "I'll accept the stipulation." Attorney Reback rejoined, "Great." The opposition was also supported by the deposition of Amanugi, who testified that, based on Dr. Ghaderi's written consent to settlement, she had offered plaintiffs $125,000 to settle the case, and that the offer had been accepted.
Dr. Ghaderi's reply memorandum again argued that her consent for CAP-MPT to settle the case had "remained in effect only until" her revocation, and that she had revoked it "prior to completion of the Settlement Agreement."
The trial court denied the motion on the basis that, since plaintiffs had unconditionally accepted the $125,000 settlement offer, "CAP-MPT operating with Dr. Ghaderi's consent and within her authorization appears to have completed a contract before she revoked her consent."
On September 23, 2004, the trial court severed the breach of contract cause of action and ordered it tried first. The parties were directed to file simultaneous trial briefs.
On October 6, 2004, Dr. Ghaderi filed her trial brief. In that document, filed nearly fifteen months after the mediation, Dr. Ghaderi asserted, for the first time, that "[a]ny attempt to introduce evidence *348 of discussions, purported agreements, or any form of communication at mediation or thereafter" is barred by the mediation confidentiality provisions of the Evidence Code. (Evid.Code §§ 1115-1128.) Dr. Ghaderi's trial brief raised no other issue. Her sole position was that plaintiffs could not prove the existence of a contract to settle the malpractice action, because any proof would violate the confidentiality of the mediation.
The case proceeded to trial where, over objection, Amanugi testified as to the events at the mediation. The trial court concluded that a valid, enforceable contract had been entered into prior to Dr. Ghaderi's withdrawal of her consent.[6] The court stated, "Whether, when and how Dr. Ghaderi withdrew her consent is irrelevant if the settlement agreement was entered into by her agent acting within her consent. If so, the settlement agreement became effective and enforceable notwithstanding her later withdrawal of consent. [¶] . . . [¶] The bottom issue, for this court, is whether an oral settlement agreement that was entered into by an attorney who was specifically authorized by his client to accept the settlement terms is enforceable. This settlement agreement, in the court's view, meets the conditions for and is therefore enforceable as an oral contract." The trial court ordered specific performance of the agreement.
The court subsequently entered judgment in favor of plaintiffs for $125,000 plus prejudgment interest. Dr. Ghaderi filed a timely notice of appeal.

CONTENTIONS OF THE PARTIES
Dr. Ghaderi again argues that her revocation of consent was sufficient to prevent the settlement from becoming effective, and that no evidence of the events occurring at the mediation was admissible due to the principles of mediation confidentiality. Plaintiffs dispute each of these arguments.

DISCUSSION

1. A Valid Oral Contract Was Formed

Under general rules of the laws of contract, a contract is formed when capable parties mutually agree to a lawful object supported by consideration. (Civ.Code, § 1550.) Contracts may be oral, except as required by statute. (Civ.Code, § 1622.) Once a valid offer is accepted, the parties are bound. A subsequent revocation is not valid. (Civ.Code, §§ 1586, 1587.)
When an insurer settles a case within policy limits under a policy that gives the insurer the right to settle without the insured's consent, the insured's consent to the settlement is unnecessary. (Fiege v. Cooke, supra, 125 Cal.App.4th at p. 1353, 23 Cal.Rptr.3d 496.) In such a case, the insurer is permitted to take full control of the settlement negotiations and the insured is precluded from interfering. (Id. at p. 1354, 23 Cal.Rptr.3d 496.) The insured may not prevent settlement by purporting to withhold consent. (Ibid.)
Professional liability policies, however, present a different problem. By statute, no medical malpractice insurer shall enter into a settlement without the written consent *349 of the insured. (Bus. & Prof.Code, § 801, subd. (g).) Thus, unless such consent is provided, the insurer has no right to conclude a settlement of the action brought against the insured. When such an insurer has the written consent of the insured, however, the rule of Fiege applies and the insurer may take full control of the settlement negotiations, within the limits of the insured's written consent. The insured no longer has any right to object to the settlement or to otherwise interfere in the process.[7]
In this case, CAP-MPT had Dr. Ghaderi's written consent to settle the action for $125,000. With this authorization, CAP-MPT entered into a valid oral contract to settle the action for that amount. Dr. Ghaderi's subsequent revocation of her consent was both irrelevant and ineffectual. CAP-MPT was authorized when it made the offer which plaintiffs accepted; the offer could not be revoked after the contract was formed. Plaintiffs' contractual right had attached and CAP-MPT was legally bound to perform under the agreement whatever concerns it may have had about the effect of Dr. Ghaderi's tardy attempt to withdraw her consent.

2. Mediation Confidentiality is No Bar

Evidence Code section 1119 provides as follows: "Except as otherwise provided in this chapter: [¶] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (b) No writing ... that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." The purpose of mediation confidentiality is "to ensure open communication" in mediation. (Stewart v. Preston Pipeline Inc. (2005) 134 Cal.App.4th 1565, 1575, 36 Cal.Rptr.3d 901.)
In this case, the mediation took place on July 9, 2003. The next day, counsel appeared before the trial court, set forth the facts that had taken place, and sought guidance on how to proceed. Thereafter, for fifteen months, the parties litigated the legal effect of the events which had taken place at the mediation. Indeed, the relevant facts  Dr. Ghaderi's written consent to settlement, the offer, its acceptance, and Dr. Ghaderi's subsequent revocation of consent  were and are undisputed; the sole dispute was as to their legal effect. Until her October 6, 2004 trial brief in this action, Dr. Ghaderi never challenged the admissibility of these facts *350 or the trial court's authority to receive such evidence and to determine its legal effect. Indeed, Dr. Ghaderi stated those facts in a declaration, argued them in her motion, and asserted they were undisputed in her separate statement. Her attorney went so far as to stipulate to some of these facts at her deposition, stating that Dr. Ghaderi was "not disputing" the offer or its acceptance. These circumstances clearly demonstrate that this evidence was not "compelled" in violation of Evidence Code, section 1119. Nor would any purpose or rationale of the mediation statute be served by applying it in this case.
Moreover, under these facts, for Dr. Ghaderi to now assert mediation confidentiality is an impermissible exaltation of form over substance. Dr. Ghaderi does not dispute the relevant facts; she never has. She has simply decided that, since the facts do not appear to favor her current legal position which had been repeatedly rejected by the trial court, she will now assert that the court can take no notice or evidence of these facts, because they happened to occur in the course of a mediation. Recognition of mediation confidentiality in this case would not help to ensure open communication in mediation; but it would allow a disgruntled litigant to use the shield of mediation confidentiality as a convenient place behind which to hide facts, although indisputably true, she no longer believes are favorable.
When a party asks the court to determine a matter, the party is estopped from arguing the court's action was, in fact, outside of the court's statutory power to resolve. (Gee v. American Realty & Construction, Inc. (2002) 99 Cal.App.4th 1412, 1414, 122 Cal.Rptr.2d 167; Conservatorship of Kevin M. (1996) 49 Cal.App.4th 79, 92, 56 Cal.Rptr.2d 765.) This is, in effect, what Dr. Ghaderi has done in this case. For fifteen months, Dr. Ghaderi placed before the trial court the facts of the mediation and sought a legal determination as to their effect, effectively conceding the trial court's jurisdiction to resolve the dispute. Only when it appeared that the trial court's determination was going against her did Dr. Ghaderi then argue that the mediation confidentiality statutes put the undisputed facts beyond the court's reach. To allow Dr. Ghaderi to seek the court's resolution of the legal effect of the proceedings before the mediator and thereafter argue the Evidence Code barred the court from doing so "`"would permit [her] to trifle with the courts."'" (Gee v. American Realty & Construction, Inc., supra, 99 Cal.App.4th at p. 1414, 122 Cal.Rptr.2d 167.)
We find Dr. Ghaderi's attempt to prevent enforcement of the undisputed settlement contract on the ground of mediation confidentiality particularly egregious in this case, in that, once Dr. Ghaderi signed the written consent to settle, she had no further rights to object to the settlement at all. (See Fiege v. Cooke, supra, 125 Cal.App.4th at p. 1354, 23 Cal.Rptr.3d 496 [when the insured is fully covered by insurance, "`"the primary insurer is entitled to take control of the settlement negotiations and the insured is precluded from interfering therewith."'"]) Dr. Ghaderi consented to CAP-MPT settling plaintiffs' claim and the claim was settled prior to Dr. Ghaderi revoking her consent. Just as Dr. Ghaderi has no authority to challenge the settlement by a subsequent withdrawal of her consent, she similarly has no authority to challenge the settlement by raising the principles of mediation confidentiality. Having given her written consent to CAP-MPT, Dr. Ghaderi cannot be heard to complain about the settlement CAP-MPT reached.
We do not here disagree with the principle that mediation confidentiality rights *351 cannot be waived impliedly by merely raising a claim about an agreement reached through mediation. (Eisendrath v. Superior Court (2003) 109 Cal.App.4th 351, 360, 134 Cal.Rptr.2d 716.) We simply hold that once a party voluntarily declares certain facts to be true, stipulates that she does not dispute them and extensively litigates the legal effect of such facts, she is estopped to later claim that the court must disregard those facts based upon a belated assertion of mediation confidentiality.[8] We therefore affirm.[9]

DISPOSITION
The judgment is affirmed. Plaintiffs shall recover their costs on appeal.
I Concur: KLEIN, P.J.
ALDRICH, J., Dissenting.
I respectfully dissent.

INTRODUCTION
By avoiding the mediation confidentiality statutes (Evid.Code, § 1115 et seq.), the majority ignores the pivotal and dispositive law governing this case. A proper analysis of this statutory scheme, together with its legislative history, leads inescapably to the conclusion that in this case there was no admissible evidence of an oral contract. Therefore, the trial court erred in accepting oral and documentary evidence made during the mediation and in entering judgment for plaintiffs on their breach of oral contract cause of action. The matter must be reversed and remanded for a trial on the merits.

FACTUAL AND PROCEDURAL BACKGROUND

1. The initial complaint.

On March 27, 2002, plaintiffs filed a wrongful death complaint against Lida Ghaderi, M.D., alleging medical malpractice caused the death of Kintausha Clemmons (Clemmons).

2. The July 9, 2003, mediation.

Cooperative of American Physicians, Inc./Mutual Protection Trust (CAP-MPT) was Dr. Ghaderi's medical malpractice provider.[1]
On July 9, 2003, the parties attended mediation with the Honorable Robert T. Altman, retired. Plaintiffs and their counsel appeared. Dr. Ghaderi was present with her two attorneys, Kent T. Brandmeyer and Robert C. Reback. Attorney Brandmeyer was the CAP-MPT attorney *352 and attorney Reback was Cumis counsel.[2] Ms. Obi Amanugi, a CAP-MPT claims specialist, was also present.
Before any discussions occurred, Amanugi presented Dr. Ghaderi with a standard CAP-MPT written consent to settlement form. This one-page, three paragraph document authorized CAP-MPT to negotiate a settlement on behalf of Dr. Ghaderi. It recognized that the settlement amount was not to exceed that authorized by CAP-MPT's claims review committee and was not to be construed as an admission of liability. It also stated that Dr. Ghaderi's consent to settlement could only be revoked in writing and would remain in force until a written revocation was received by CAP-MPT at its offices.[3]
Dr. Ghaderi executed the consent to settlement form and in her own handwriting added the following statement to the document: "The settlement value is limited to one hundred & twenty five thousand dollars + zero cents." At the time Dr. Ghaderi signed the consent to settlement, she understood her consent would remain in effect until her written revocation was received by CAP-MPT.
The parties engaged in settlement discussions. At one point, Judge Altman was instructed to offer plaintiffs $125,000 to settle the matter in exchange for a dismissal with prejudice and a waiver of costs. Pursuant to these instructions, Judge Altman extended that offer to plaintiffs. Plaintiffs accepted the offer.
Judge Altman then placed the essential terms of the settlement into a document for the parties to sign. Additionally, the proposed settlement agreement stated in part that the parties "further agree that this agreement may be introduced into evidence in any subsequent proceeding to enforce the terms of this agreement and that Evidence Code Section 1119 does not apply in such a proceeding." Plaintiffs and their counsel signed the settlement agreement, which was initialed by Judge Altman as witness.
Dr. Ghaderi was informed that the case had settled. Dr. Ghaderi stated she did not agree with the resolution of the case and declined to sign the settlement agreement. Dr. Ghaderi left the building without signing the written settlement agreement prepared by Judge Altman. Neither of her counsel signed the settlement agreement.
Amanugi contacted the CAP-MPT office and learned that CAP-MPT would consider Dr. Ghaderi's oral revocation of her consent valid.

3. The July 10, 2003, hearing.

At a hearing on two motions, the plaintiffs' attorney and the CAP-MPT attorney representing Dr. Ghaderi appeared. Both counsel recounted the events of the preceding day, including that plaintiffs had accepted the $125,000 offer, but Dr. Ghaderi had departed before signing the settlement agreement prepared by Judge Altman. The parties asked for guidance. *353 Plaintiffs' attorney expressed the bewilderment of both counsel when he stated, "we are somewhat flummoxed by this...."
The trial court speculated that perhaps there was an enforceable settlement, vacated the upcoming trial date, and set an order to show cause re dismissal.

4. The written revocation of consent and order to show cause.

On July 16, 2003, Dr. Ghaderi sent CAP-MPT a letter revoking her consent to settlement.
The following day, CAP-MPT's attorney informed the trial court that CAP-MPT was "still trying to figure it out[,]" but he did not think CAP-MPT would pay if Dr. Ghaderi did not consent. The trial court set an order to show cause re dismissal and ordered Dr. Ghaderi to appear on that date.
Dr. Ghaderi personally appeared at the dismissal hearing with counsel. After an unreported conference in chambers, the trial court placed on the record the fact that Dr. Ghaderi was unwilling to consent to the settlement. The trial court suggested plaintiffs bring a motion to enforce settlement (Code Civ. Proc., § 664.6) and set a hearing to consider such a motion.

5. Plaintiffs' motion to enforce settlement.

Plaintiffs moved to enforce settlement pursuant to Code of Civil Procedure section 664.6. After describing the events of July 9, 2003, plaintiffs contended that a valid oral contract was entered into because Dr. Ghaderi had provided CAP-MPT written consent to settle. Plaintiffs attached to their motion Dr. Ghaderi's written consent to settle, the settlement agreement prepared by Judge Altman and signed only by plaintiffs and their counsel, and a declaration from Judge Altman.
Dr. Ghaderi did not dispute plaintiffs' summary of the event of July 9, 2003. However, she opposed plaintiffs' motion arguing that "no agreement was consummated" because her consent had been withdrawn and thus, "CAP/MPT has no authority to execute a settlement agreement on her behalf." Dr. Ghaderi also argued that the settlement could not be enforced because it did not meet the requirements of Code of Civil Procedure section 664.6 as there was no "writing signed by the parties outside the presence of the court or orally before the court...." Lastly, Dr. Ghaderi argued that since her insurance policy with CAP-MPT was a professional liability policy, no settlement could be enforced because there was no consent to settle as required by Business and Professions Code section 801, subdivision (g).[4]
The trial court denied the motion to enforce settlement. The court concluded that the requirements of Code of Civil Procedure section 664.6 had not been met. The trial court speculated, however, that there might be an enforceable oral contract and suggested plaintiffs amend the complaint to allege breach of contract.

6. The breach of contract cause of action.

On March 9, 2004, plaintiffs amended the complaint to add a cause of action for *354 breach of contract. Plaintiffs alleged that Dr. Ghaderi breached an oral settlement arrived at during the mediation.
Plaintiffs served a request for admissions on Dr. Ghaderi and deposed Dr. Ghaderi. In response to this discovery, Dr. Ghaderi did not deny the events that had occurred during the July 9, 2003 mediation.

7. The summary adjudication motion.

Dr. Ghaderi moved for summary adjudication of the breach of contract cause of action. Dr. Ghaderi argued there was no enforceable settlement because the mediation had concluded before a formal settlement agreement had been executed and her refusal to sign the settlement agreement and her act of leaving the building were manifestations of her lack of consent. Dr. Ghaderi also argued these acts constituted a withdrawal of her consent to settle. (Bus. & Prof.Code, § 801.)
The trial court denied Dr. Ghaderi's motion for summary adjudication.
On September 23, 2004, the trial court granted plaintiffs' motion to sever the causes of action. The case proceeded to a court trial only on plaintiffs' cause of action for breach of oral contract.

8. The trial and judgment entered against Dr. Ghaderi.

Plaintiffs submitted the following documents at trial: (1) the consent to settlement signed by Dr. Ghaderi; (2) the settlement agreement prepared by Judge Altman; (3) Dr. Ghaderi's July 16, 2003, letter revoking her consent to settlement; (4) Dr. Ghaderi's deposition testimony; (5) Amanugi's deposition testimony; and (6) a declaration from Judge Altman.
In Dr. Ghaderi's trial brief she argued that the mediation confidentiality rules codified in Evidence Code section 1115 et seq., and in particular Evidence Code section 1119, made inadmissible all evidence of an oral contract. Dr. Ghaderi argued, "the law of the State of California does not permit discussions at a mediation or documents generated thereat to be introduced at trial to prove that an agreement was created there." Dr. Ghaderi filed a formal objection to plaintiffs' evidence in which she objected to "any and all testimony and/or documentary evidence concerning the any [sic] mediation held in this action ... pursuant to California Evidence Code, § 1119, et seq. and Ryan v. Garcia (1994) 27 Cal.App.4th 1006, 33 Cal.Rptr.2d 158." Dr. Ghaderi asserted that plaintiffs could not prove the existence of an oral contract to settle the medical malpractice case because any proof would violate the confidentiality of mediation.
At the bench trial of the breach of contract cause of action, the parties agreed to almost everything that had occurred on July 9, 2003, including that they had entered into mediation discussions once Dr. Ghaderi had provided written consent to CAP-MPT to settle the case up to $125,000. The parties further agreed that plaintiffs had accepted a $125,000 offer, Judge Altman prepared a written settlement agreement reflecting the parties' agreement, and Dr. Ghaderi had refused to sign the document and had left the mediation. The only factual item in conflict was what Amanugi did once Dr. Ghaderi refused to sign the settlement agreement. Over objection, Amanugi was called to the stand and testified about those events. The bulk of the trial consisted of arguments of counsel as to the effect of Dr. Ghaderi's act of refusing to sign the settlement agreement prepared by Judge Altman and whether the mediation confidentiality statutes, including Evidence Code section 1119, prevented plaintiffs from proving their case.
*355 The trial court issued a tentative statement of decision in favor of plaintiffs on the breach of contract cause of action. The trial court held an enforceable oral contract for settlement came into existence before Dr. Ghaderi withdrew her consent. The trial court reasoned that Dr. Ghaderi had given her attorneys, her authorized agents, authority to communicate a $125,000 offer to plaintiffs, and that offer had been accepted prior to any withdrawal of consent.
On December 23, 2004, the trial court adopted the tentative decision as its final decision, issued a final statement of decision, and entered a judgment in favor of plaintiffs. The judgment ordered Dr. Ghaderi to pay plaintiffs $125,000, plus prejudgment interest and costs.
Dr. Ghaderi timely appealed.

DISCUSSION

1. Introduction.

In mediation, Dr. Ghaderi gave her attorneys the authority to offer plaintiffs up to and including $125,000 to settle the case. Acting within the confines of their authority, the attorneys caused this offer to be conveyed to plaintiffs who accepted the offer. Dr. Ghaderi refused to sign a settlement agreement, and terminated the mediation by leaving the building. The majority does not dispute any of these facts. Inexplicably, however, the majority never discusses the mediation confidentiality statutes.
I would hold that the mediation confidentiality statutes contained in Evidence Code section 1115 et seq., preclude plaintiffs from proving the existence of an offer and acceptance, the terms of an oral settlement, or the creation of an oral agreement. I reach this holding by examining the confidentiality statutes, the 1997 Law Revision Commission comments to the present statutes that articulate the Legislature's intent, and the most recent case authority. All of these compel one conclusion  evidence of an oral agreement formed during the July 9, 2003, mediation was made inadmissible in the trial by Evidence Code section 1119 and plaintiffs cannot satisfy the explicit burden under Evidence Code sections 1118 and 1124 to introduce evidence of an oral agreement.

2. The mediation confidentiality statutes.

"California's Legislature has a strong policy favoring mediation as an alternative to litigation. Because mediation provides a simple, quick, and economical means of resolving disputes, and because it may also help reduce the court system's backlog of cases, it is in the public interest to encourage its use. [Citation.]" (Doe 1 v. Superior Court (2005) 132 Cal.App.4th 1160, 1165, 34 Cal.Rptr.3d 248.)
The mediation confidentiality statutes were designed by the Legislature to "promote `a candid and informal exchange regarding events in the past.... This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes.' [Citations.]" (Foxgate Homeowners' Assn., Inc. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 14, 108 Cal.Rptr.2d 642, 25 P.3d 1117 (Foxgate).) "[C]onfidentiality is essential to effective mediation...." (Ibid.)
Commencing with Evidence Code section 1115 et seq., the Legislature has delineated the parameters of mediation confidentiality and the express statutory exceptions thereto.[5] These statutes apply *356 to all mediations, except family conciliation proceedings (Fam.Code, § 1800 et seq.), mediation of custody and visitation issues (Fam.Code, § 3160 et seq.), and court supervised mandatory settlement conferences pursuant to California Rules of Court, rule 222. (Evid.Code, § 1117.)[6]
Although "[m]ediation [may take] many forms[]" (Saeta v. Superior Court, supra, 117 Cal.App.4th at p. 270, 11 Cal.Rptr.3d 610), it is defined broadly in Evidence Code section 1115 as "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (1997 Cal. Law Revision Com. com., 29B West's Ann. Evid.Code (2006 supp.) foll. § 1115, p. 198 ["To accommodate a wide range of mediation styles, the definition is broad, without specific limitations on format."].)[7]
Evidence Code section 1119 is an expansive limitation on the admissibility of evidence emanating from mediations. It "prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation." (Foxgate, supra, 26 Cal.4th at p. 13, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) It bars admission in any civil action, and in other specified proceedings, of anything said or any admission, as well as any writing, made for the purpose of, in the course of, or pursuant to, a mediation or mediation consultation. Evidence Code section 1119 mandates that all communications, negotiations, or settlement discussions between the participants in the course of mediation shall be confidential. It also makes such evidence not subject to discovery.
Evidence Code section 1119 reads:
"Except as otherwise provided in this chapter:
"(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
"(b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding *357 in which, pursuant to law, testimony can be compelled to be given.
"(c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."
The only way evidence of an oral agreement arrived at in mediation can be admissible is for it to meet the requirements of an express statutory exception to Evidence Code section 1119. This exception is delineated in Evidence Code section 1124, which refers to Evidence Code section 1118.
Evidence Code section 1124 states:
"An oral agreement made in the course of, or pursuant to, a mediation is not made inadmissible, or protected from disclosure, by the provisions of this chapter if any of the following conditions are satisfied:
"(a) The agreement is in accordance with Section 1118.
"(b) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and all parties to the agreement expressly agree, in writing or orally in accordance with Section 1118, to disclosure of the agreement.
"(c) The agreement is in accordance with subdivisions (a), (b), and (d) of Section 1118, and the agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."
Evidence Code section 1118 states:
"An oral agreement `in accordance with Section 1118' means an oral agreement that satisfies all of the following conditions:
"(a) The oral agreement is recorded by a court reporter, tape recorder, or other reliable means of sound recording.
"(b) The terms of the oral agreement are recited on the record in the presence of the parties and the mediator, and the parties express on the record that they agree to the terms recited.
"(c) The parties to the oral agreement expressly state on the record that the agreement is enforceable or binding or words to that effect.
"(d) The recording is reduced to writing and the writing is signed by the parties within 72 hours after it is recorded."
Evidence Code section 1122 also permits the disclosure of oral agreements emanating from a mediation if there is an express agreement to do so, under certain conditions. It specifies, in part, that a communication or writing "made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible" if there is express agreement to disclose in writing or "orally in accordance with Section 1118...." (Evid.Code, § 1122, subd. (a)(1)(2).)[8]
*358 Other statutes also delineate express exceptions to mediation confidentiality. For example, Evidence Code section 1123 addresses when written settlement agreements emanating from mediation are not made inadmissible.[9] Evidence Code section 1121 delineates when a mediator's report or findings are not confidential.
The Legislature also clarified that statements made during mediation and "mediation materials are confidential not only during mediation, but also after the mediation ends...." (Evid.Code, § 1126; 1997 Cal. Law Revision Com. com., 29B West's Ann. Evid.Code (2006 supp.) foll. § 1126, p. 217.)[10] Evidence Code section 1125 defines when mediation ends for purposes of confidentiality. This includes when there is an oral agreement fully resolving the dispute in accordance with Evidence Code section 1118. (Evid.Code, § 1125, subd. (a)(2).) Evidence Code section 1125 recognizes that a party may end a mediation without reaching an agreement. (Evid.Code, § 1125, subd. (a)(2).)[11]

3. Plaintiffs had no admissible evidence of an oral contract.

The comprehensive mediation confidentiality statutes delineated above makes it clear that plaintiffs are precluded from proving their cause of action. To prove their breach of oral contract cause of action, plaintiffs had to show that Dr. Ghaderi had given settlement authority to her attorneys, the terms of the offer, and that the offer was accepted before Dr. Ghaderi rescinded authority. At trial, Dr. Ghaderi objected to all testimony and documentary evidence concerning the mediation pursuant to Evidence Code section 1115 et seq. A proper ruling on that objection should have prevented plaintiffs from proving their case as there would have been no admissible evidence of an oral agreement.
Subdivisions (a) and (c) of Evidence Code section 1119 preclude admission in any civil proceeding of all communications, negotiations, settlement discussions, and anything said for the purpose of, in the *359 course of, or pursuant to a mediation. Thus, for plaintiffs to prove the oral agreement, they would have to meet the explicit requirements of the exceptions in Evidence Code section 1124, that in turn, refer to Evidence Code section 1118. Plaintiffs are unable to do so.
Specifically, after the mediation ended, there was no reliable means of sound recording, such as a recording by a court reporter or tape recorder that recorded an agreement; the terms of the oral agreement were not recited on the record in the presence of the parties and the mediator and the parties did not express on the record the terms of such an agreement; the parties did not expressly state on the record that the agreement was enforceable or binding; and the agreement was not reduced to writing or signed by the parties within 72 hours after a recording. The parties did not expressly agree in writing or orally that the agreement could be disclosed and there were no issues of fraud, duress, or illegality.
To the extent the settlement agreement prepared by Judge Altman was used as evidence of an oral contract, this writing was also made inadmissible by subdivision (b) of Evidence Code section 1119, as well as Evidence Code sections 1122 and 1123, as there was no express agreement that it could be disclosed and it was not signed by the settling parties. (See fns. 8 & 9.) Although the settlement agreement drafted by Judge Altman included a provision waiving Evidence Code section 1119, neither Dr. Ghaderi nor her attorneys signed the settlement agreement. Rather, when Dr. Ghaderi stated she did not want to settle, did not sign the settlement agreement, and left the scene, she ended the mediation without reaching an agreement and terminated the mediation. (Evid. Code, § 1125, subd. (c); see fn. 11.) Likewise, Judge Altman's declaration was inadmissible. (Evid.Code, §§ 1119, 1121.)
Because the evidence of an oral agreement was made inadmissible by Evidence Code section 1119 and the exceptions in Evidence Code sections 1118 and 1124 do not apply, there was no evidence to prove plaintiffs' breach of contract cause of action and Dr. Ghaderi was entitled to judgment as a matter of law.[12]

4. The 1997 California Law Revision Commission comments demonstrate that there is no enforceable oral contract.

My interpretation of the mediation confidentiality scheme is bolstered by the 1997 California Law Revision Commission comments to the statutes. These comments demonstrate that the statutes were designed to make inadmissible in a civil proceeding any evidence of an oral agreement in this case.
To provide context to the 1997 California Law Revision Commission comments, it is necessary that I discuss two cases decided *360 prior to the enactment of the present statutes.

a. Ryan and Regents.

In 1994, Ryan v. Garcia, supra, 27 Cal. App.4th 1006, 33 Cal.Rptr.2d 158 (Ryan) addressed a situation similar to the one before us.
In Ryan, the parties mediated their dispute. After meeting with the parties, the mediator announced a settlement had been reached. Someone stated the terms of the agreement and one party was assigned to reduce the agreement to writing. The parties left, believing the case was settled; they later disagreed about the terms of the settlement and no writing was executed. (Ryan, supra, 27 Cal.App.4th at pp. 1008-1009, 33 Cal.Rptr.2d 158.)
The plaintiffs amended their complaint to add a cause of action to enforce an oral settlement agreement and the case proceeded to a court trial only on that cause of action. (Ryan, supra, 27 Cal.App.4th at p. 1009, 33 Cal.Rptr.2d 158.) At trial, the defendants objected to anything said during the mediation, contending such statements were inadmissible under former Evidence Code section 1152.5 (Section 1152.5), the predecessor to Evidence Code section 1119. The trial court overruled the objection as to "statements made after the mediator announced the parties had reached an agreement. The court reasoned mediation had ended when an agreement was reached, and the statement of the terms of the agreement was therefore not a part of mediation." (Ryan, supra, at p. 1009, 33 Cal.Rptr.2d 158.)
The appellate court phrased the issue before it as "whether the evidence used to prove the existence and terms of the oral settlement agreement was admissible." (Ryan, supra, 27 Cal.App.4th at p. 1009, 33 Cal.Rptr.2d 158.) Ryan examined Section 1152.5 that contained some of the language now found in Evidence Code section 1119. Section 1152.5 stated in relevant part: "Evidence of anything said or of any admission made in the course of the mediation is not admissible in evidence...." (Ryan, supra, at p. 1009, 33 Cal.Rptr.2d 158.)[13]
Ryan had to define the operative phrase, "in the course of the mediation," as neither this phrase nor the boundaries of the mediation process were defined in Section 1152.5. (Ryan, supra, 27 Cal.App.4th at p. 1010, 33 Cal.Rptr.2d 158.) The plaintiffs argued that the evidence of "the existence and terms of the settlement agreement were not made `in the course of mediation' because the mediation was successfully completed when the mediator convened the parties to recite the terms of the settlement." (Ibid.) "They contend[ed] this must be so because, otherwise, settlements reached in mediation would be unenforceable." (Ibid.)
Ryan, supra, 27 Cal.App.4th 1006, 33 Cal.Rptr.2d 158, rejected the plaintiffs' argument concluding, as the defendant had asserted, that "the existence and terms of the settlement agreement were part of the mediation and, therefore, were inadmissible as evidence." (Id. at p. 1010.) Ryan, supra, reasoned that Section 1152.5 "must be interpreted broadly to serve its purpose, that is, to encourage the use of mediation by ensuring confidentiality.... [¶] By using the broad phrase `in the course of the mediation,' the Legislature manifested its intent to protect a broad range *361 of statements from later use as evidence in litigation. [¶] . . . [¶] Furthermore, narrow interpretation would lead the trial court to filter the mediation proceedings to determine if any portion of the proceeding crossed the line from negotiation into agreement. This is the type of disclosure and use of statements made in mediation the confidentiality statute is meant to preclude. [¶] [W]e need not undertake the task of defining the boundaries of mediation. Instead, we merely determine that the statements made here among the parties and the mediator, at the time and in the place set for mediation, were well within `the course of the mediation,' and, therefore, evidence of those statements was inadmissible in a later proceeding under section 1152.5. [¶] . . . [¶] Indeed, if the parties to mediation sign a written settlement agreement waiving confidentiality, the agreement can be enforced in the courts by a simple motion. (§ 1152.5, subd. (a)(2); Code Civ. Proc., § 664.6.)" (Ryan, supra, pp. 1011-1013, 33 Cal.Rptr.2d 158, fns.omitted.)
Ryan, supra, 27 Cal.App.4th 1006, 33 Cal.Rptr.2d 158, held that the trial court "erred by admitting evidence, over . . . objection, of statements made in the course of mediation. [Citation.] Without this evidence, there is no substantial evidence of an oral settlement agreement and the judgment cannot be sustained." (Id. at p. 1013, 33 Cal.Rptr.2d 158, fn. omitted.)
Justice Raye dissented in Ryan. He would have held that "[o]nce a compromise is reached the mediation process is over. An oral agreement cannot be crafted until after compromise has been reached. Therefore an oral statement of the terms of the agreement does not fall within Evidence Code 1152.5." (Ryan, supra, 27 Cal.App.4th at p. 1014, 33 Cal.Rptr.2d 158 (dis. opn. of Raye, J.).)
Soon after Ryan, supra, a conflict was created when Regents of University of California v. Sumner (1996) 42 Cal.App.4th 1209, 50 Cal.Rptr.2d 200 (Regents) was decided. In Regents, supra, the plaintiffs brought a sexual harassment action against the Regents, and others. (Id. at pp. 1210-1211, 50 Cal.Rptr.2d 200.) Following mediation sessions, the terms of a settlement agreement were dictated into a tape recorder. The plaintiffs indicated they agreed to the terms of the settlement. The settlement required the formal approval of the Regents and the parties agreed that after the Regents approved the settlement, the terms would be placed into a formal document. (Id. at p. 1211, 50 Cal.Rptr.2d 200.) "However, after the dictated settlement was concluded and before the typed release was prepared," the plaintiffs decided not to "go through" with the settlement. (Ibid.) Thereafter, the defendants brought actions to enforce the dictated settlement agreement. The trial court granted the defendants' motion for summary judgment, from which the plaintiffs appealed. (Id. at p. 1212, 50 Cal.Rptr.2d 200.)
In affirming the summary judgment, Regents, supra, 42 Cal.App.4th 1209, 50 Cal.Rptr.2d 200, rejected the reasoning of Ryan, supra. Among other holdings, Regents held that Ryan was distinguishable because "[i]n the present case, the parties concluded their mediation session, and then created a transcript of the settlement they had reached in order to memorialize the agreement they had reached. The transcript of the settlement was not a part of the mediation session, where section 1152.5 would bar introduction into evidence of concessions of liability made only for purposes of mediation or settlement discussions. No valid purpose would be served here by misinterpreting 1152.5 to bar introduction of evidence regarding the settlement agreed to by the parties." (Regents, *362 supra, at p. 1213, 50 Cal.Rptr.2d 200.)
Regents, supra, 42 Cal.App.4th 1209, 50 Cal.Rptr.2d 200, concluded by stating that Justice Raye's dissenting opinion in Ryan, supra, "properly recognized that evidence of oral statements defining the scope of a settlement agreement reached after mediation is admissible to enforce the settlement, since the Legislature's enactment of section 1152.5 shields only statements made `in the course of' mediation from admission in subsequent proceedings, and section 1152.5 does not affect the admissibility of evidence of an oral settlement which is reached after mediation has successfully concluded: `Once a compromise is reached the mediation process is over. An oral agreement cannot be crafted until after compromise has been reached. Therefore an oral statement of the terms of the agreement does not fall within [section] 1152.5.'" (Regents, supra, at p. 1213, 50 Cal.Rptr.2d 200 (citing dis. opn. of Raye, J.).)
This split of authority was quickly addressed in 1997 when the Legislature repealed Section 1152.5 and replaced it with the comprehensive scheme now found in Evidence Code section 1115 et seq. (Stats.1997, ch. 772, §§ 3, 5.)[14]
With the enactment of Evidence Code section 1119, the present statutory scheme has continued, without substantial change, the provisions of Section 1152.5. However, the protections in Evidence Code section 1119 are more expansive. Evidence Code section 1119 "explicitly applies in a subsequent arbitration or administrative adjudication, as well as in any civil action or proceeding. . . . In addition, the protection of Section 1119(a) extends to oral communications made for the purpose of or pursuant to a mediation, not just oral communications made in the course of the mediation. [¶] . . . [S]ubdivision (b) expressly encompasses any type of `writing' as defined in Section 250, regardless of whether the representations are on paper or on some other medium." (1997 Cal. Law Revision Com. com., 29B West's Ann. Evid.Code (2006 supp.) foll. § 1119, p. 202.)
When the exceptions to Evidence Code section 1119 were drafted, Evidence Code sections 1124 and 1118 were crafted to set the standards for the admission in civil proceedings of oral agreements made in the course of, or pursuant to, a mediation. These and other statutes were expressly designed to codify Ryan, supra, and reject Regents, supra.
As the 1997 California Law Revision Commission comments to Evidence Code section 1124 state in part: "[Evidence Code, section] 1124 sets forth specific circumstances under which mediation confidentiality is inapplicable to an oral agreement reached through mediation. Except in those circumstances, Sections 1119 (mediation confidentiality) and 1124 codify the rule of Ryan [, supra,] 27 Cal.App.4th 1006, 33 Cal.Rptr.2d 158 . . . (mediation confidentiality applies to oral statement of settlement terms), and reject the contrary approach of Regents [, supra,] 42 Cal.App.4th 1209, 50 Cal.Rptr.2d 200 . . . (mediation confidentiality does not protect oral statement of settlement terms). [¶] Subdivision (a) of Section 1124 facilitates enforcement of an oral agreement that is recorded and memorialized in writing in accordance with Section 1118." (1997 Cal. Law Revision Com. com., 29B West's Ann. *363 Evid.Code (2006 supp.) foll. § 1124, p. 214.)
The Legislature has established by statute when a "mediation ends." As relevant here, Evidence Code section 1125, subdivision (a)(2) provides that a mediation ends when "[a]n oral agreement that fully resolves the dispute is reached in accordance with [Evidence Code] Section 1118." (See fn. 11.) The 1997 California Law Revision Commission comments to Evidence Code section 1125 state in part: "Subdivision (a)(2) applies where mediation participants fully resolve their dispute by an oral agreement that is recorded and memorialized in writing in accordance with Section 1118. The mediation is over upon completion of that procedure, and the confidentiality protections of this chapter do not apply to any later proceedings, such as attempts to further refine the content of the agreement. See Section 1124 (oral agreements reached through mediation). . . ." (1997 Cal. Law Revision Com. com., 29B West's Ann. Evid.Code (2006 supp.) foll. § 1125, p. 215.)
Thus, by enacting the present comprehensive mediation confidentiality statutory scheme, the Legislature firmly articulated the policy that all communications of an oral settlement and all communications relating to such an agreement, including negotiations, made for the purpose of, in the course of, or pursuant to, a mediation are inadmissible unless there was compliance with the express statutory requirements of Evidence Code sections 1118 and 1124.
It is tempting to prohibit Dr. Ghaderi from escaping the deal to which she agreed. But, such a result would encourage a flexible approach to the statutes. The Legislature has re-drafted the mediation confidentiality statutes after Ryan and Regents to reject that approach. The Legislature has articulated explicit steps that a party must take to admit evidence of an oral agreement made for the purpose of, in the course of, or pursuant to, a mediation. Because the parties did not take these steps here, such as by memorializing the agreement in a recording or in a writing, the evidence of the July 9, 2003, oral agreement was inadmissible.

5. Precedent establishes that we are not permitted to judicially craft an exception to the statutory scheme.

By focusing on estoppel, the majority in essence is attempting to create a new exception to the comprehensive scheme. This cannot be done. In Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 and Rojas v. Superior Court (2004) 33 Cal.4th 407, 15 Cal.Rptr.3d 643, 93 P.3d 260 (Rojas), the Supreme Court pronounced that mediation confidentiality is to be strictly enforced, even in situations that on the surface might beg for flexibility.
In Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117, the trial court awarded sanctions based upon a mediator's report that there had been misconduct during the mediation proceedings. (Id. at pp. 6-10, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) The report indicated that an attorney had engaged in a pattern of tactics pursued in bad faith and solely intended to delay. (Id. at pp. 6-7, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) Although the court of appeal reversed for other reasons, it also addressed the admissibility of the report. The court of appeal found it was necessary to create a nonstatutory exception to the mediation confidentiality statutes so that the mediator's report could be considered and sanctions imposed. It reasoned that otherwise parties who disobeyed valid orders governing participation in mediation would be shielded from their obstructive behavior. (Id. at p. 9, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) The Supreme Court reversed concluding that the *364 mediation confidentiality statutes "are clear. [Evidence Code s]ection 1119 prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation." (Foxgate, supra, at p. 13, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (Id. at p. 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117, fn. omitted.) Foxgate held that the "motion for sanctions and the trial court's consideration of the motion and attached documents violated both [Evidence Code sections 1119 and 1121." (Foxgate, supra, at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) Thus, even though the goal of preventing bad faith conduct was laudable, the purpose of the mediation statutes  to promote and ensure open communications in mediations  would not be served if exceptions to the statutes were judicially created.[15]
In Rojas, supra, 33 Cal.4th 407, 15 Cal. Rptr.3d 643, 93 P.3d 260, the owner of an apartment complex settled a construction defect case with the contractors as a result of a mediation. As part of the settlement, the parties stipulated that reports and photographs prepared for the mediation were to remain confidential. In a subsequent lawsuit, tenants of the apartment complex sought to discover the files, witness statements, analyses of raw data, and photographs prepared during the prior mediation. Noting that all of the items were "`prepared for the purpose of, in the course of, or pursuant to, [the] mediation' in the underlying action" (id. at p. 423, 15 Cal.Rptr.3d 643, 93 P.3d 260), the Rojas court held that the mediation confidentiality statutes are not subject to a "`good cause' exception." (Ibid.) Since permitting the disclosure of the items conflicted with Evidence Code section 1119, the items were not discoverable.
Together, Foxgate and Rojas stand for the proposition that the courts may not craft exceptions to the statutory scheme because the Legislature has decided that mediation confidentiality is required to further the purpose of mediation and has decided to statutorily limit the number of exceptions thereto.
Thus, it would be unwarranted for us to expand the Legislature's list of express statutory exceptions by judicially permitting plaintiffs to prove an oral contract when to do so would not further the purpose of the statutory scheme.

6. The arguments of the majority are not persuasive.

The majority concludes that a valid contract was formed because Dr. Ghaderi provided the attorneys for her insurance carrier with consent to settle and the case was resolved within the confines of that authority. For this proposition, the majority relies only upon Fiege v. Cooke (2004) 125 Cal.App.4th 1350, 23 Cal.Rptr.3d 496 (Fiege). Fiege is irrelevant to the present situation and its rationale is inapplicable.
*365 In Fiege, supra, 125 Cal.App.4th 1350, 23 Cal.Rptr.3d 496, the plaintiff orally agreed before the court to a settlement arrived at between himself and the insurers of the defendants. (Id. at p. 1353, 23 Cal.Rptr.3d 496.) Thereafter, the plaintiff tried to escape from the settlement and the defendants successfully moved for enforcement of the agreement pursuant to Code of Civil Procedure section 664.6. (Fiege, supra, at p. 1353, 23 Cal.Rptr.3d 496.) Code of Civil Procedure section 664.6 permits the enforcement of an oral agreement under certain circumstances. It states in part, "If parties to pending litigation stipulate, in a writing signed by the parties, outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Italics added.)
Quoting extensively from Robertson v. Chen (1996) 44 Cal.App.4th 1290, 52 Cal. Rptr.2d 264 (Robertson), Fiege concluded that while the defendants themselves did not agree in writing or orally before the court to the settlement, the agreement was enforceable because the attorneys for the defendants agreed to the settlement orally before the court in the presence of the insurers' representatives who did not object, the insurers had total control over settlement, and the insurers fully covered the settlement under the insurance policies. (Fiege, supra, 125 Cal.App.4th at pp. 1353, 1355-1356, 23 Cal.Rptr.3d 496.) Fiege held that this satisfied Code of Civil Procedure section 664.6's requirement that the "parties" had agreed to the settlement "orally before the court."
Fiege, supra, 125 Cal.App.4th 1350, 23 Cal.Rptr.3d 496 does not control the issues here. The issue in this case is not who negotiated the settlement on behalf of Dr. Ghaderi, but if the oral agreement formed during the July 9, 2003, mediation can be proven. The mediation statutes do not provide for an exception to the requirements of Evidence Code sections 1118, 1119, and 1124 when mediation negotiations are being handled by an insurance carrier's representatives.
Nor does the rationale of Fiege, supra, 125 Cal.App.4th at 1353, 23 Cal.Rptr.3d 496, apply here. Fiege recognized that in Levy v. Superior Court (1995) 10 Cal.4th 578, 41 Cal.Rptr.2d 878, 896 P.2d 171, the Supreme Court "held `that the term "parties" as used in [Code of Civil Procedure] section 664.6 . . . means the litigants themselves, and does not include their attorneys of record.'" (Fiege, supra, at p. 1353, 23 Cal.Rptr.3d 496.) Fiege also recognized that Levy's conclusion was "`based on the proposition that the Legislature intended to require litigants' `direct participation' because this `tends to ensure that the settlement is the result of their mature reflection and deliberate assent.' [T]his `protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle,' and that it `protects parties from impairment of their substantial rights without their knowledge and consent.' [Citation.]" (Id. at p. 1354, 23 Cal.Rptr.3d 496.) However, Fiege concluded that the goals discussed in Levy were met when litigants, by contract, have given total control to their insurance carriers to resolve a dispute and the negotiated settlement is fully covered by the policy. In such situations, the right to settle rests with the insurer and not the insured. (Fiege, supra, at p. 1353, 23 Cal.Rptr.3d 496; Robertson, supra, 44 Cal.App.4th at pp. 1293-1296, 52 Cal.Rptr.2d 264.) As Robertson, supra, recognized, this rationale does not apply when there is a professional liability policy, such as the one Dr. Ghaderi had with CAP-MPT.
*366 Robertson, supra, the case Fiege quoted extensively, correctly stated: "An exception to the general rule affording insurers the unconditional right to settle most third party claims without the insured's consent are the provisions in professional liability policies which `often give the insured the right to approve or reject any settlement negotiated by the insurer. This is designed to prevent settlements which might be regarded in the community as an admission of wrongdoing by the insured, thus injuring the insured's professional reputation.' (Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1995) ¶ 7:2492 et seq., pp. 7K-17 to 7K-18; see, e.g., Bus. & Prof.Code, § 801, subd. (d) [requiring the consent of health care professionals for settlement of health care malpractice claims]; accord, Carlile v. Farmers Ins. Exchange (1985) 173 Cal.App.3d 975, 980, fn. 3, 219 Cal.Rptr. 773.) The rationale of Levy [v. Superior Court, supra, 10 Cal.4th 578, 41 Cal.Rptr.2d 878, 896 P.2d 171] would apply to protect the insured in the professional liability context where the insured's consent is specifically required for settlement." (Robertson, supra, 44 Cal.App.4th at pp. 1294-1295, fn. 3, 52 Cal.Rptr.2d 264.)
Additionally, unlike Fiege, supra, and Robertson, supra, the case before us does not involve a traffic accident where monetary considerations are paramount in settling the dispute. While CAP-MPT would be responsible for the financial aspect of settling with plaintiffs, other aspects vital to a resolution were significant to Dr. Ghaderi, such as the potential harm to Dr. Ghaderi's reputation. Thus, as Business and Professions Code section 801, subdivision (g) (see fn. 4) demands, Dr. Ghaderi's explicit approval of a settlement would be required. When that approval was withdrawn before any settlement was finalized, there was no enforceable deal.
Lastly, even if the rationale of Fiege, supra, applies when there is a professional liability policy, it is inappropriate to do so here.
The purported July 9, 2003, settlement took place in a mediation, before a mediator. Code of Civil Procedure section 664.6 permits an expedited proceeding to enforce settlements when the "parties to pending litigation stipulate . . . orally before the court . . . ." When the oral agreement sought to be enforced was made orally before a mediator who had no adjudicatory function, the agreement was not "`before the court.'" (Murphy v. Padilla (1996) 42 Cal.App.4th 707, 711-715, 49 Cal. Rptr.2d 722; In re Marriage of Assemi (1994) 7 Cal.4th 896, 30 Cal.Rptr.2d 265, 872 P.2d 1190, clarified by Levy v. Superior Court, supra, 10 Cal.4th at p. 585, fn. 3, 41 Cal.Rptr.2d 878, 896 P.2d 171.) After the mediation, when Dr. Ghaderi and her attorneys explained the events of July 9, 2003, to the trial court, they did so to explain why Dr. Ghaderi believed there was no enforceable contract. Further, the mediation ended when Dr. Ghaderi refused to execute the settlement agreement and left the mediation. CAP-MPT indicated it would consider her withdrawal of consent effective and thereafter, CAP-MPT always argued to the trial court that there was no enforceable settlement. Thus, it cannot be said that a mediated settlement was the result of mature reflection and deliberate assent. To enforce the oral settlement by the use of the expedited procedures provided in Code of Civil Procedure section 664.6 would impair Dr. Ghaderi's substantial rights without her knowledge and consent, and without her carrier, CAP-MPT, agreeing to the resolution of the case.
The majority holds that Dr. Ghaderi is estopped from asserting the mediation confidentiality statutes. This holding turns a blind eye to the mediation confidentiality *367 statutory scheme and is a veiled attempt at relabeling waiver as estoppel.
Throughout the litigation in this case, Dr. Ghaderi and her attorneys honestly described the events of July 9, 2003, that raised the issue as to whether there was an enforceable oral contract. The majority concedes that these representations cannot be classified as an implied waiver by Dr. Ghaderi of the mediation confidentiality statutes. This concession is based upon Eisendrath v. Superior Court (2003) 109 Cal.App.4th 351, 134 Cal.Rptr.2d 716 (Eisendrath).
In Eisendrath, supra, 109 Cal.App.4th 351, 134 Cal.Rptr.2d 716, a former husband filed a motion to correct a spousal support agreement. The judgment was based upon a settlement reached in mediation. (Id. at p. 355, 134 Cal.Rptr.2d 716.) The ex-husband argued that the order did not accurately reflect the parties' agreement. In support of the motion, the ex-husband filed a declaration that recalled mediation negotiations and conversations. (Id. at pp. 355-356, 134 Cal.Rptr.2d 716.) The ex-wife filed a motion for a continuance so that she could depose the mediator. She stated she was willing to waive mediation confidentiality and argued her ex-husband had impliedly waived the "mediation privilege." (Id. at p. 356, 134 Cal. Rptr.2d 716.) The ex-husband opposed the ex-wife's request and asked for a protective order barring the deposition, other discovery, and admission of any communications during the mediation sessions. In his opposition, the ex-husband stated he would not rely on discussions within the scope of mediation confidentiality for his motion to correct the judgment. The trial court denied the protective order finding that both parties had impliedly waived the mediation confidentiality statutes. (Ibid.)
On appeal, Eisendrath, supra, 109 Cal.App.4th 351, 134 Cal.Rptr.2d 716, held that without express consent as required in the mediation confidentiality statutes, the ex-husband had not impliedly waived confidentiality by discussing confidential material in his declaration. (Id. at pp. 357, 362.) Eisendrath recognized that because the ex-husband needed information to make his argument, and because express waivers of confidentiality from both parties were required, the ex-wife had "a substantial measure of control over [the ex-husband's] ability to present evidence in support of his motion to correct the spousal support agreement. Nonetheless, this result does not disturb our interpretation of the statutory scheme in question. In explaining that the Legislature had balanced conflicting policies in enacting this scheme, the Foxgate court recognized that the scheme effectively gives control over evidence of some sanctionable misconduct to the party engaged in the misconduct. . . . Following the Foxgate court, we assume that the Legislature considered these limitations on the presentation of evidence when it enacted the statutory scheme." (Id. at p. 365, 134 Cal.Rptr.2d 716.)
Thus, the fact that prior to trial Dr. Ghaderi revealed in her pleadings and orally before the court confidential material does not result in an implied waiver of the mediation confidentiality statutes.[16] *368 Although the majority agrees that there was no implied waiver here, the majority attempts to turn these same facts into an estoppel.
The majority is mixing traditional notions of equitable estoppel with estoppel to contest the court's jurisdiction.
Traditionally, equitable estoppel is a concept based upon fairness. "In order to establish a claim or defense based on equitable estoppel, a party must establish four elements: `(1) The party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]' [Citation]." (Chen v. Superior Court (2004) 118 Cal.App.4th 761, 772, fn. 14, 13 Cal.Rptr.3d 248.)
Here, plaintiffs knew all of the facts and they did not change their position in reliance upon any action taken by Dr. Ghaderi. There is no unfairness to plaintiffs as they can return to the trial court and litigate the merits of their medical malpractice case.
Also, the majority's reliance upon Gee v. American Realty & Construction, Inc. (2002) 99 Cal.App.4th 1412, 122 Cal. Rptr.2d 167 and Conservatorship of Kevin M. (1996) 49 Cal.App.4th 79, 56 Cal. Rptr.2d 765 confuses another type of estoppel. The majority states, "When a party asks the court to determine a matter, the party is estopped from arguing the court's action was, in fact, outside the court's statutory power to resolve." (ante, at p. 350.) This is an imprecise statement of the law, as demonstrated by the two cases cited by the majority, and an ill-conceived attempt at making an end-run around the strict limits of the confidentiality statutes.
The Supreme Court in In re Griffin (1967) 67 Cal.2d 343, 62 Cal.Rptr. 1, 431 P.2d 625 articulated the correct legal proposition: "When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when `To hold otherwise would permit the parties to trifle with the courts.' [Citation.] On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.] Substantive rules based on public policy sometimes control the allowance or disallowance of estoppel." (Id. at pp. 345-346, 62 Cal.Rptr. 1, 431 P.2d 625.)
For example, a defendant was not estopped to attack banishment as a condition of probation even though he requested it, as public policy forbade banishment. (People v. Blakeman (1959) 170 Cal.App.2d 596, 598, 339 P.2d 202.) "On the other *369 hand a party who has procured a divorce decree is estopped to claim later that it is invalid." (In re Griffin, supra, 67 Cal.2d at p. 348, 62 Cal.Rptr. 1, 431 P.2d 625.) Or, when a defendant orally stipulates to arbitration, the defendant is estopped from arguing that a written stipulation to arbitrate was required. (Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics (1998) 61 Cal.App.4th 672, 680, 71 Cal.Rptr.2d 771.)
In Gee v. American Realty & Construction, Inc., supra, 99 Cal.App.4th 1412, 122 Cal.Rptr.2d 167, the defendants asked the trial court to permit them to file abstracts of judgment. Thereafter, they challenged that procedure. The court of appeal held the defendants were estopped to challenge the result they generated. In Conservatorship of Kevin M., supra, 49 Cal.App.4th 79, 56 Cal.Rptr.2d 765, the appellate court held there was an estoppel that resulted in permitting one party to have a jury trial, even though the request did not meet the time limitations of Welfare and Institutions Code section 5350. (Conservatorship of Kevin M., supra, at pp. 91-93, 56 Cal. Rptr.2d 765.)
Here, Dr. Ghaderi never argued that the trial court could not proceed. She never argued that the trial court lacked jurisdiction. She never argued that the trial did not have the right to decide her case. She never used a procedure and then argued against the use of that procedure. Rather, at every step of the process, Dr. Ghaderi stated, and restated her position  there was no enforceable settlement. When Dr. Ghaderi disclosed facts, she did so to explain the events and to explain why she believed there was no enforceable oral contract.
Thus, Dr. Ghaderi is not estopped from arguing the evidence of an oral agreement emanating from the mediation is inadmissible.

CONCLUSION
The majority does not want to accept the result of the legislative mandate that communications made for the purpose of, in the course of, or pursuant to, a mediation are not admissible in a civil proceeding unless specifically made admissible. Since the facts here do not fit into any of the exceptions, the majority inartfully has crafted a result that may feel rightbut is just wrong.
I would reverse the judgment because plaintiffs should have been prohibited from introducing at trial on their breach of contract cause of action the existence and terms of any oral agreement. The mediation confidentiality statutes made inadmissible all evidence of an oral contract between Dr. Ghaderi and plaintiffs. The trial court had no substantial evidence of an oral contract, and thus no evidence upon which it could render a judgment for plaintiffs on their cause of action for breach of an oral contract. The matter should be reversed and remanded to the trial court where plaintiffs would have a trial on the merits of their medical malpractice cause of action, since that cause of action has not been dismissed.
NOTES
[1] The complaint was filed by Michelle Simmons, as the personal representative of the Estate of Kintausha Clemmons. Thereafter, Michael Dujuan Nelson III, through his guardian ad litem, Michelle Simmons, was added in as a plaintiff. Michelle Simmons and Michael Dujuan Nelson III were decedent's mother and minor son. At some point, Tommie Simmons was also added as a plaintiff. For simplicity, we refer to these parties as "plaintiffs."
[2] Clemmons had been under the care of a nephrologist who was treating her with dialysis for renal failure. The complaint alleged that, without consulting with Clemmons's nephrologist, Dr. Ghaderi took Clemmons off dialysis, resulting in her death from severe renal failure.
[3] "Cumis counsel" is the term sometimes used to refer to the independent counsel provided to an insured by an insurer contesting coverage but still providing a defense. The authority for such counsel is San Diego Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358, 364, 208 Cal.Rptr. 494 and Civil Code, section 2860. (See also, Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2005) ¶ 7:769, p. 7B-91 et seq.)
[4] According to plaintiffs' counsel's declaration, at some time after the July 10, 2003 hearing, Attorney Brandmeyer had told plaintiffs' counsel "that he was uncertain as to what was occurring but to move fast and get the minor's compromise approved."
[5] Dr. Ghaderi's motion was also supported by the declaration of Attorney Melanie Shornice, an associate of Attorney Reback. Her declaration purported to set forth the events that took place at the July 9, 2003 mediation. As Attorney Shornice had not been present at the mediation, objections to her declaration were sustained.
[6] Interestingly, this was not the court's initial decision. At first, the trial court concluded that "a settlement was not reached, because the settlement process as followed by Judge Altman was to write up the settlement agreement, and to provide a signature line for signature by plaintiffs, by the counsel, by defense counsel and defendant.... ¶ So I think the authorization was revoked in the middle of the settlement discussions. I know an argument could be made to the contrary, and [a] strong argument too, but that is the side I come down on."
[7] Our colleague's dissent argues that the rule of Fiege has no application because Dr. Ghaderi had a right under her professional liability policy to withhold her consent to any settlement negotiated by her insurer (citing Robertson v. Chen, supra, 44 Cal.App.4th at pp. 1293-1296, 52 Cal.Rptr.2d 264). This argument ignores the undisputed fact that Dr. Ghaderi had given her written consent to the settlement that CAP-MPT had negotiated with the plaintiffs and thus had no more right to object to its enforcement than would an insured who had no right to withhold consent in the first place.
[8] Assuming arguendo that Foxgate Homeowners' Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 and Rojas v. Superior Court (2004) 33 Cal.4th 407, 15 Cal.Rptr.3d 643, 93 P.3d 260 preclude any judicially-created exceptions to the mediation confidentiality statutes  a proposition emphasized and relied upon by our dissenting colleague  they present no bar in this case. While both cases reversed judicially-created exceptions to the mediation confidentiality statutes, we create no such exception here. We simply prevent a litigant from tardily relying on mediation confidentiality to shield from the court facts which she had stipulated to be true and had extensively litigated without raising such bar.
[9] On appeal, Dr. Ghaderi asserts that the judgment was improperly entered against her rather than CAP-MPT. The assertion is meritless. Dr. Ghaderi was the named defendant in this case, not CAP-MPT. The insurer was never a party to malpractice litigation. Judgment was properly entered against Dr. Ghaderi.
[1] It appears that CAP-MPT is an interindemnity arrangement organized pursuant to Insurance Code section 1280.7. (See, Mundy v. Mutual Protection Trust (1990) 219 Cal. App.3d 127, 267 Cal.Rptr. 917.)
[2] The authority for such counsel is San Diego Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358, 364, 208 Cal. Rptr. 494 and Civil Code section 2860.
[3] In part, the document stated, "I consent to the settlement of the [plaintiffs'] claim for an amount not to exceed that authorized by the Claims Review Committee of [CAP-MPT]. It is understood that my consent to the negotiated settlement of this claim involves the compromise of a doubtful and disputed claim.... [¶] ... [¶] I understand and agree that this consent to settlement may only be revoked in writing. This consent to settlement shall remain in full force and effect unless and until written revocation of my consent to settlement is received by [CAP-MPT at its office]."
[4] Business and Professions Code section 801 refers to professional liability insurance. Subdivision (g) states in pertinent part: "Notwithstanding any other provision of law, no insurer shall enter into a settlement without the written consent of the insured, except that this prohibition shall not void any settlement entered into without that written consent. The requirement of written consent shall only be waived by both the insured and the insurer."
[5] Other statutes also address aspects of mediation. (E.g., Evid.Code, § 703.5 [making mediators incompetent to testify about proceedings over which they presided].)
[6] The parties concede that they participated in a mediation on July 9, 2003, pursuant to an order of the trial court. Further, the record contains no information suggesting that the proceedings were anything other than a traditional mediation. As will become apparent by my discussion, the distinction between mediation and other types of proceedings, such as mandatory settlement conferences pursuant to California Rules of Court, rule 222, and arbitrations, can become critical. Many unforeseen results can occur if parties unwittingly participate in mediation. (See, Saeta v. Superior Court (2004) 117 Cal.App.4th 261, 11 Cal.Rptr.3d 610 [distinguishing mediation from arbitration]; Doe 1 v. Superior Court, supra, 132 Cal.App.4th at pp. 1166-1167, 34 Cal.Rptr.3d 248, fn. omitted ["If counsel wish to avoid the effect of the mediation confidentiality rules, they should make clear at the outset that something other than a mediation is intended. Except where the parties have expressly agreed otherwise, appellate courts should not seize on an occasional reference to `settlement' as a means to frustrate the mediation confidentiality statutes."].)
[7] "Mediation" is also defined in Code of Civil Procedure section 1775.1.
[8] Evidence Code section 1122 reads:

"(a) A communication or a writing, as defined in Section 250, that is made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if either of the following conditions is satisfied:
"(1) All persons who conduct or otherwise participate in the mediation expressly agree in writing, or orally in accordance with Section 1118, to disclosure of the communication, document, or writing.
"(2) The communication, document, or writing was prepared by or on behalf of fewer than all the mediation participants, those participants expressly agree in writing, or orally in accordance with Section 1118, to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation.
"(b) For purposes of subdivision (a), if the neutral person who conducts a mediation expressly agrees to disclosure, that agreement also binds any other person described in subdivision (b) of Section 1115."
[9] Evidence Code section 1123 reads:

"A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied:
"(a) The agreement provides that it is admissible or subject to disclosure, or words to that effect.
"(b) The agreement provides that it is enforceable or binding or words to that effect.
"(c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure.
"(d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute."
[10] Evidence Code section 1126 reads: "Anything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends."
[11] Evidence Code section 1125 reads in part:

"(a) For purposes of confidentiality under this chapter, a mediation ends when any one of the following conditions is satisfied:
"(1) The parties execute a written settlement agreement that fully resolves the dispute.
"(2) An oral agreement that fully resolves the dispute is reached in accordance with Section 1118.
"...
"(c) This section does not preclude a party from ending a mediation without reaching an agreement. This section does not otherwise affect the extent to which a party may terminate a mediation."
[12] In responding to the requests for admissions served upon her, Dr. Ghaderi admitted (1) the genuineness of the written consent to settlement dated July 9, 2003; (2) the July 9, 2003, written consent to settlement signed by her could only be revoked by her in writing; and (3) the written consent for settlement dated July 9, 2003, was to remain in full force and effect until her written revocation was received by CAP-MPT. The trial court found a secondary basis for awarding judgment to plaintiffs based upon these admissions. Plaintiffs argue these responses constitute judicial admissions that prove the breach of contract cause of action. (Code Civ. Proc., § 2033.410 [matter admitted in response to request for admissions is conclusively established].) Assuming for purposes of discussion only, that the admission statements were admissible, they do not prove the terms of an enforceable oral contract. At the most, they would prove the content of the consent to settle.
[13] Section 1152.5 was enacted in 1985. It was amended in 1992, 1993, 1994, and 1996. (Added by Stats.1985, ch. 731, § 1. Amended by Stats.1992, ch. 163, § 73, operative Jan. 1, 1994; Stats.1993, ch. 219, § 77.7, Stats.1993, ch. 1261, § 6; Stats.1994, ch. 1269, § 8; Stats.1996, ch. 174, § 1.)
[14] Former Evidence Code section 1152.6 addressing the inadmissibility of mediator's findings and statements was also repealed and replaced with Evidence Code section 1121. (Stats.1997, ch. 772, §§ 3, 6.)
[15] Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 left the door slightly ajar for the creation of non-statutory exceptions in extraordinary situations. (Id. at pp. 15-16, 108 Cal.Rptr.2d 642, 25 P.3d 1117, discussing Rinaker v. Superior Court (1998) 62 Cal.App.4th 155, 74 Cal.Rptr.2d 464 [statutory rights of mediation confidentiality yields to minor's due process rights to put on a defense and confront witnesses]; Olam v. Congress Mortg. Co. (N.D.Cal.1999) 68 F.Supp.2d 1110 [parties, but not mediator, expressly waived confidentiality; mediator's testimony was necessary to determine competency of party to enter into settlement].)
[16] In Regents, supra, 42 Cal.App.4th 1209, 50 Cal.Rptr.2d 200, the appellate court also held that the plaintiffs suing for sexual harassment had waived the confidentiality provisions by introducing "the transcript of the dictated settlement into evidence, and did nothing to timely object to the introduction or consideration of such evidence. [The question of confidentiality] was not raised by [plaintiffs] at all; it was the trial court which raised this issue at the hearing on the motion for new trial. . . ." (Id. at p. 1213, 50 Cal.Rptr.2d 200.) None of the facts discussed by Regents, supra, as constituting a waiver exist in our case. And, it is questionable as to whether Regents, supra, can be relied upon for any of its holdings in light of its express rejection by the Legislature. I acknowledge that Regents, supra, has been cited on the issue of waiver in footnote 8 in Foxgate, supra, 26 Cal.4th at page 10, 108 Cal.Rptr.2d 642, 25 P.3d 1117. However, Foxgate, does not discuss Regents' viability after the statutory changes or the 1997 California Law Revision Commission comments. Further, the footnote is dicta.